RRI REALTY CORP.,
Plaintiff–Appellee–Cross–Appellant,

v.

The INCORPORATED VILLAGE OF SOUTHAMPTON, Roy L. Wines, Jr., Mayor, Orson D. Munn, Jr., Paul Parash, Charles F. Schreier, Jr., and Richard L. Fowler, Constituting the Board of Trustees of the Village of Southampton, Sherburne Brown, Courtland Smith, Victor Finalborgo, John Winters and Morley A. Quatroche, Constituting the Board of Architectural Review of the Village of Southampton, and Eugene R. Romano, the Building Inspector of the Village of Southampton, Defendants–Appellants–Cross–Appellees,

William Matrick, Jr., Carlos Nadal, Jacob Buchheit, Elise Korman and Marvin Dozier, Constituting the Zoning Board of Appeals of the Village of Southampton, Defendants.

Nos. 152, 153, 154, 329 and 290. Docket 88–7441, 88–7443, 88–7445, 88–7447 and 88–7485.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1988.

Decided March 29, 1989.

---

Edward Brodsky, New York City (Sarah S. Gold, Lawrence P. Gottesman, Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, on the brief), for defendant-appellant-cross-appellee Village of Southampton.

Therese Neilsen, Uniondale, N.Y. (Lois H. Kleinberg, J.M. Furey & R.J. Furey, Hempstead, N.Y., on the brief), for defendants-appellants-cross-appellees Members of Bd. of Architectural Review.

Evan H. Krinick, Uniondale, N.Y. (Frank L. Amoroso, Richard C. Mooney, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., on the brief), for defendants-appellants-cross-appellees Members of Bd. of Trustees.

John H. McLoone, Jr., Williston Park, N.Y. (J. Maloney, Murphy, McLoone, Nelson, Dobise & McGrane, Williston Park, N.Y., on the brief), for defendant-appellant-cross-appellee Romano.

Glenn S. Goldstein, New York City (Ellen G. Margolis, Summit Rovins & Feldesman, New York City, on the brief), for plaintiff-appellee-cross-appellant.

(Peter Tufo, Anita Fisher Barrett, Barry M. Schreibman, Brown & Wood, New York City, submitted an amicus curiae brief for Assn. of Towns of the State of N.Y., N.Y. State Conference of Mayors & Other Municipal Officers.)

Before FEINBERG, NEWMAN and GARTH,[*] Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns primarily the issue of whether an applicant for a building permit, subsequently ordered to be issued by a state court, had a sufficiently clear entitlement to the permit to constitute a property interest protected by the Due Process Clause. The issue arises on an appeal by the Village of Southampton, New York, and various Village officials, from a judgment of the District Court for the Eastern District of New York (Charles P. Sifton, Judge), after a jury trial, awarding RRI Realty Corp. ("RRI") $2.7 million in damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, 1988 (1982). RRI claimed that the Village officials, acting in their official capacity, had wrongfully denied RRI's application for a building permit, thereby depriving RRI of its property without due process of law. RRI cross-appeals to challenge the pretrial ruling of the District Court denying RRI's motion to amend its complaint to assert a claim for punitive damages against the Village officials in their individual capacities.

We conclude that the record was insufficient to support a finding of such a clear entitlement to the permit as to establish a property interest protected by the Fourteenth Amendment. Accordingly, we reverse the judgment of the District Court, dismiss the cross-appeal, and remand with

---

[*] The Honorable Leonard I. Garth of the United States Court of Appeals for the Third Circuit, sitting by designation.

directions to enter judgment for the defendants.

## Background

In 1979, RRI purchased a 63–room mansion and surrounding oceanfront property in the Village of Southampton. After planning extensive renovations for the mansion, RRI held discussions with the Village Building Inspector, Eugene Romano, regarding procedures for acquiring the requisite building permit. Although the plans were somewhat inchoate, it was clear that several features of the proposed design exceeded height restrictions in the local zoning code. Romano issued a limited building permit to RRI, covering only minor structural renovations; he advised RRI not to apply for successive building permits as plans changed but to make one omnibus building permit application when its plans became final. RRI also applied for, and received, a height variance from the Zoning Board of Appeals ("ZBA") in anticipation of future construction.

Construction began in early 1981. By the spring of 1983, renovation had proceeded far enough to permit RRI to complete the final design plans for the residence. Under local law, RRI had to submit these plans to the Village's Architectural Review Board ("ARB") for approval before the Building Inspector could issue a permit. *See* Southampton, N.Y., Code § 116.32 (1984) (hereinafter "Code"). The ARB approved RRI's final overall design in May 1983. The Building Inspector then instructed RRI to submit an application to his office for a comprehensive building permit. Romano also told RRI to apply to the ZBA for another variance—this one covering the portion of the proposed structure that would exceed the height limitations of the previous variance.

With RRI's application pending before the ZBA, RRI and the Building Inspector devised a plan to divide the building permit application into three stages. Stage one represented the structural work covered by the initial building permit already issued by Romano. Stage two—the permit for which is the subject of this litigation—represented the balance of the construction that was in conformity with the zoning law and the initial variance. Stage three included that part of the structure for which a new height variance was required.

RRI submitted an application to the Building Inspector for a stage-two building permit in February 1984 along with final plans, which covered the entire project but were marked to indicate the three stages of construction. In early April, RRI, apparently at the Building Inspector's request, submitted a new set of plans that did not include any stage-three alterations. These altered plans showed a house missing most of its roof, parts of one side, and an entire new wing. On April 11, the Building Inspector referred these revised plans and the permit application to the ARB for its final consideration. Apparently, under the Code, the ARB had to approve these more detailed designs even though it had approved plans for the overall project in 1983.

In early May 1984, the Building Inspector notified RRI, as he had throughout the spring, that a permit was about to be issued. However, no permit was forthcoming. The ARB decided to take no action on the building permit application. No one informed RRI of this decision. At about this time, the RRI project became a target of community rumor and a controversial matter in Village politics. Prominent Southampton residents attacked the project for attracting undesirable elements and promoting improper behavior. Reacting to this pressure, the Acting Mayor, a member of the Village Board of Trustees, ordered the Building Inspector to issue a stop-work order on May 17 because RRI lacked a building permit for all of the post-stage-one construction. The ZBA also denied RRI's application for its stage-three variance.

On June 1, 1984, RRI commenced an Article 78 proceeding in New York Supreme Court, Suffolk County, against the Building Inspector and the ARB to compel issuance of a stage-two building permit and

to cancel the stop-work order. The court granted summary judgment for RRI, finding that the ARB had refused to approve the stage-two permit because of its awareness that the stage-three permit would violate the existing zoning regulations and that this was an impermissible consideration for the ARB, whose role is limited by section 116–33 of the Village Code to matters of aesthetic judgment. *RRI Realty Corp. v. Romano,* No. 84–10639 (N.Y. Sup.Ct. Apr. 3, 1986) (unreported). The state court then found that by the time RRI had commenced the Article 78 proceeding, the ARB was in violation of the Code provision requiring the ARB, if it does not approve a permit application, to hold a public hearing within thirty days of its receipt of the application. Code, *supra,* § 116.32.E. Since the thirty-day period had expired, RRI was deemed entitled to the stage-two permit as a matter of law. *RRI Realty Corp. v. Romano, supra.* The court ordered issuance of a permit for what was "concededly legal work." *Id.*

RRI received its building permit in August 1986 and commenced this action for damages caused by the delay in the issuance of the stage-two permit and for attorney's fees and costs. The jury found in favor of RRI, awarding it $1.9 million in damages. The judgment also includes $762,970.36 for attorney's fees and costs.

### Discussion

The gravamen of the complaint is that RRI had a property interest in the stage-two permit, that Village officials arbitrarily and capriciously deprived RRI of its property interest in this permit, and that this violation of substantive due process was an official Village policy for which the municipality is liable for damages under section

1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In the view we take of the case, it becomes necessary to consider only the threshold issue of whether the evidence sufficed to create a jury issue as to whether RRI had a property interest in the stage-two permit.

### I. Development of the Legal Standard

Federal courts have followed a somewhat uneven course in explicating the rationale for and the extent to which the substantive component of the Due Process Clause of the Fourteenth Amendment protects landowners in disputes with local agencies empowered to limit the permissible uses of their property. Though appellate courts frequently invoke Justice Marshall's observation that the role of the Supreme Court (and presumably of every other federal court as well) "should not be to sit as a zoning board of appeals," *Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting), their willingness to entertain a claim that a local land use regulator has acted arbitrarily or capriciously sometimes leads them to require trial courts to make an inquiry similar to the sort of determination that zoning boards of appeal routinely make.[1]

The initial effort to subject local land use decisions to constitutional scrutiny involved challenges to new zoning restrictions imposed upon property owners. The Supreme Court's first consideration of such a challenge, though occurring in an era when substantive due process was often a formidable protection against governmental regulation, met with a significant rebuff.

---

1. It has been observed, however, that the degree of scrutiny appropriate for federal courts in deciding whether local decision-making is arbitrary so as to violate the substantive due process component of the Fourteenth Amendment is less rigorous than that applied by state courts in determining whether such decision-making is arbitrary for purposes of violating state zoning

law. *See Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1034 (3d Cir.), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987); *Shelton v. City of College Station,* 780 F.2d 475, 482–83 (5th Cir.) (in banc), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

*Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed.2d 303 (1926). The Supreme Court ruled that zoning regulations will survive substantive due process challenge unless they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 395, 47 S.Ct. at 121. With the decline of substantive due process as a protection against economic regulation, zoning regulation continued easily to survive constitutional challenge. *See Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Pertinent to the later development of the case law concerning land use regulation is the fact that in the early zoning cases, there was no dispute as to whether the plaintiff had a property interest within the meaning of the Fourteenth Amendment; his property interest was in the land he owned, land that the local regulating body sought to restrict as to use.

The next phase of land regulation cases involved applications by property owners to obtain a change in existing zoning regulations. Denials of rezoning applications were challenged as a denial of property in violation of the substantive component of the Due Process Clause. Without pausing to focus on whether the property interest at stake was the land owned by the plaintiff or the zone change for which he was applying, courts generally rejected these challenges, applying the deferential standards of *Euclid.* An early rezoning application case in the District of Columbia Circuit, *Leventhal v. District of Columbia,* 100 F.2d 94, 95 (D.C.Cir.1938), expressly relied on *Euclid,* and subsequent rezoning cases in that Circuit simply cited *Leventhal* for the applicable standard, *e.g., Lewis v. District of Columbia,* 190 F.2d 25, 27 (D.C. Cir.1951), even in those rare instances where the denial of a rezoning application

was held to be arbitrary and capricious, *e.g., Shenk v. Zoning Commission,* 440 F.2d 295, 297 (D.C.Cir.1971).

The analytical framework applicable to constitutional challenges to land regulation was affected by the Supreme Court's 1972 decisions in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Though concerned with an interest in employment, rather than land, and the protection of procedural, rather than substantive, due process,[2] both decisions were potentially pertinent to land regulation in their announcement that a property interest, within the meaning of the Fourteenth Amendment, includes not only what is owned but also, in some limited circumstances, what is sought. This expanded concept of property, however, requires more than "an abstract need or desire" or "a unilateral expectation" of what is sought. *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. Instead, there must be "a legitimate claim of entitlement." *Id; see Perry v. Sindermann, supra,* 408 U.S. at 601, 92 S.Ct. at 2699.

After 1972, some courts considering constitutional challenges to land regulation began their inquiry by citing *Roth* and asking whether the plaintiff had a "clear entitlement" to the approval he was seeking from the land use regulating body. *See Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 831 (1st Cir.) (request for approval of subdivision plan; property interest assumed), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982); *United Land Corporation of America v. Clarke,* 613 F.2d 497, 501 (4th Cir.1980) (request for approval of soil erosion permit; no protectable interest "in the permit" because of discretionary authority in administrator). This same approach is reflected in *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir.

---

**2.** In addition to claiming denial of procedural due process, the plaintiffs in *Roth* and *Perry* both alleged that they had been denied employment for exercise of their First Amendment free speech rights. Neither case, however, involved a claim that a property interest had been denied by action so arbitrary as to violate the substantive component of due process.

1983), one of the few decisions rejecting dismissal on summary judgment of a claim that a denial of approval for land use was arbitrary and capricious and hence a denial of substantive due process. In a thoughtful opinion by Chief Judge Winter, the Court inquired whether an applicant for a building permit had a " 'protectible property interest in the permit' sufficient to trigger federal due process guarantees." *Id.* at 1418 (citing *United Land Corporation of America v. Clarke, supra,* 613 F.2d at 501). Chief Judge Winter concluded that the applicant had a clear entitlement to the permit under state law. In *Scott,* the applicant was not the owner of the property, although his option to purchase it would seem to have given him an interest that itself could have been considered "property" under the Due Process Clause. Chief Judge Winter characterized the interest in the applied for permit as a " 'species of property,' " *id.* at 1421 (quoting *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982)), though he noted that it is not in the same category as property that is protected by the Fourteenth Amendment's incorporation of the "takings" clause of the Fifth Amendment, *id.* & n. 20.

Many post–1972 land regulation decisions, however, have not pursued the *Roth* analysis in land regulation cases. Instead of inquiring as to the plaintiff's degree of entitlement to what he sought, these decisions have implicitly assumed that the pertinent property interest is the property the plaintiff owns and simply examined whether the action of local regulators in denying an application for the proposed use of the land was arbitrary and capricious. This has occurred both in decisions rejecting substantive due process challenges, *e.g., Burrell v. City of Kankakee,* 815 F.2d 1127 (7th Cir.1987) (rezoning application);

*Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1034–37 (3d Cir.) (development plan), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987); *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524 (1st Cir.1983) (building permit); *Scudder v. Town of Greendale,* 704 F.2d 999 (7th Cir.1983) (building permit); *South Gwinnett Venture v. Pruitt,* 491 F.2d 5 (5th Cir.) (in banc) (rezoning application), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974), and in the few decisions upholding such claims, at least against a motion for summary judgment, *e.g., Bello v. Walker,* 840 F.2d 1124 (3d Cir.) (building permit), *cert. denied,* —— U.S. ——, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988), or for dismissal for failure to state a claim, *e.g., Altaire Builders, Inc. v. Village of Horseheads,* 551 F.Supp. 1066 (W.D.N.Y.1982) (planned unit development application).[3]

*Bello* is a clear example of a court focusing exclusively on whether the local land use regulator acted arbitrarily and capriciously without inquiry as to whether the protected property interest is in the land the plaintiff owns and is seeking to use or in the permit he requires for his intended use; the Court extracted from prior cases, including those concerned with denial of equal protection, like *Arlington Heights v. Metropolitan Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), a general rule that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Bello v. Walker, supra,* 840 F.2d at 1129. *See Shelton v. City of College Station,* 780 F.2d 475, 479 (5th Cir.) (in banc) (declining to determine whether property interest was in the right to seek a zoning variance or in the right to use the plaintiff's property), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

---

**3.** *Cf. Barbian v. Panagis,* 694 F.2d 476 (7th Cir. 1982), which rejected a claim by a property owner that granting an adjacent property owner a variance from noise ordinance violated due process requirements. In *Barbian,* the property interest of the plaintiff for purposes of the substantive due process inquiry was his ownership interest, *see id.* at 480–82; for purposes of the procedural due process inquiry, plaintiff's property interest in a noise-free setting was assumed, though acknowledged not to be clear, *id.* at 488 n. 10.

*Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256 (1st Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976), also made no inquiry as to the nature of the property interest at issue, although the plaintiff there framed his claim as a denial of equal protection, rather than a denial of property without substantive due process, 539 F.2d at 259. Chief Judge Winter's opinion in *Scott v. Greenville County, supra,* however, expresses the view that *Cordeco* "fits more broadly into a line of cases addressing the substantive unfairness of the process by which governmental actors deprive a citizen of a protected interest," 716 F.2d at 1420 n. 14, because "no recognized class-based or invidious discrimination was involved," *id.* at 1420. *See Cordeco Development Corp. v. Vasquez, supra,* 539 F.2d at 260 n. 5 (separate views of Campbell, J.). *Cordeco* is one of the rare decisions in which a land regulation claim reached decision by a fact-finder (trial judge with an advisory jury).

In this Circuit, our post-*Roth* cases considering a landowner's claim of a due process violation in the denial of an application for regulated use of his land have been significantly influenced by the *Roth* "entitlement" analysis. In *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985), the landowner had been denied a permit to use his property for an automobile junkyard business. Expressly invoking *Roth,* Judge Mansfield focused initially on whether the landowner had "a legitimate claim of entitlement" to the license he sought and formulated the test for this inquiry to be that "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Id.* at 59. Finding that the licensing authorities had discretion in the issuance of the requested permit, the Court affirmed dismissal of the claim for lack of a protected property interest *in the permit,* even though the Court acknowl-

edged that the allegations of the complaint alleged "egregious misconduct" by the defendants in the denial of the permit, *id.* at 59.

We have adhered to the property interest analysis of *Yale Auto Parts* both in finding a claimed interest in a land use application insufficient to constitute Fourteenth Amendment property, *Dean Tarry Corp. v. Friedlander,* 826 F.2d 210 (2d Cir.1987) (approval sought for municipal development plan), and in finding such an interest sufficient, at least for purposes of surviving summary judgment, *Sullivan v. Town of Salem,* 805 F.2d 81 (2d Cir.1986) (application for certificates of occupancy). Our latest decision in this area, though citing the entitlement test of *Roth* and our application of that test in *Yale Auto Parts* to the permit being sought, appears to have found the requisite property interest to be an aspect of the rights enjoyed by the plaintiff as owner of his property. *Brady v. Town of Colchester,* 863 F.2d 205 (2d Cir.1988). *Brady* is an unusual case, however, in that the owner was obliged by the local authorities to seek a permit for commercial use of his property, whereas his position was that his property was already zoned for commercial use, that no permit was required, and that the local decision obliging him to seek a permit was wholly unjustified.

It is not readily apparent why land regulation cases that involve applications to local regulators have applied the *Roth* entitlement test to inquire whether an entitlement exists in what has been applied for—whether a zoning variance, a business license, or a building permit—instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously.[4] As Justice Ste-

---

4. The analytical framework for constitutional claims by plaintiffs denied requested uses of their land could be analogized to that applicable

to plaintiffs denied licenses required for pursuing a particular occupation. The latter have a liberty interest in earning a livelihood and are

vens has observed, "the opportunity to apply for [a zoning amendment] is an aspect of property ownership protected by the Due Process Clause of the Fourteenth Amendment." *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 683, 96 S.Ct. 2358, 2366, 49 L.Ed.2d 132 (1976) (Stevens, J., with whom Brennan, J., joins, dissenting). Indeed, the entitlement inquiry will not often aid the analysis in this context. When a local regulator's discretionary decision to deny an application is not arbitrary or capricious, the plaintiff will usually be deemed not to have a sufficient entitlement to constitute a protected property interest. On occasion, however, as *Yale Auto Parts* demonstrates, the plaintiff may be deemed *not* to have a protected property interest in the requested permit, even in a case where the denial of the permit *is* arbitrary. The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim. Focusing on the authority of the local regulator thereby permits the threshold rejection of some federal due process claims, without awaiting exploration of whether the regulator acted so arbitrarily as to offend substantive due process in the particular case. In any event, *Yale Auto Parts* and its progeny have committed this Circuit to the "entitlement" inquiry in land use regulation cases.

If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test of *Yale Auto Parts*—"certainty or a very strong likelihood" of issuance—must be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion en-

joyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case. *See Walentas v. Lipper*, 862 F.2d 414, 419 (2d Cir.1988); *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201–02 (2d Cir.1987); *Sullivan v. Town of Salem, supra*, 805 F.2d at 85. *Yale Auto Parts* rejected the claim of a property interest in the permit being sought because of the discretion of the local regulating body. Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The "strong likelihood" aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised. Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court.

## II. Application of the Legal Standard

In the instant case, RRI argues that absent the alleged denial of due process, there was a "certainty or a very strong likelihood" that Village officials would have granted RRI's application. RRI points to the ARB's approval of RRI's initial overall design and to the fact that stage-two construction was in full compliance with the zoning law. Moreover, there is correspondence between the Building In-

normally not required to show an entitlement to the license they seek in order to state a claim; their liberty interest is impaired if their license application is arbitrarily denied. *See Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir.1983). One land use regulation case has explicitly relied on occupational licensing cases at least to supply content to the substantive due process standard, if not to the nature of the interest being protect-

ed, *see Scott v. Greenville County, supra*, 716 F.2d at 1420, though another land use case has explicitly rejected the analogy, *see South Gwinnett Venture v. Pruitt, supra*, 491 F.2d at 7 n. 1 ("Whatever vitality remains in *Hornsby* [*v. Allen*, 326 F.2d 605 (5th Cir.1964) (application for retail liquor store license) ] ..., its holding will not be extended to zoning cases.").

spector and RRI, as well as discussions between Romano, the Board of Trustees, and the ARB to support RRI's assertion that approval of the application could be expected. Finally, RRI argues that since the ARB's time limits within which to act on the application had expired, it forfeited any discretion it may have had and was required to approve the permit.

Our reading of *Yale Auto Parts* and its progeny leads us to reject RRI's analysis. Even though there is evidence of officials' statements that approval of the application was probably forthcoming, the fact remains that the ARB had discretion to deny RRI's application for a stage-two permit. The Village Code confers wide discretion on the ARB in reviewing the final design plans:

> The [ARB] is charged with the duty of exercising sound judgment and of rejecting plans which, in its opinion, are not of harmonious character because of proposed style, materials, mass, line, color....

Code, *supra*, § 116–33.B.

Indeed, there were several reasons for rejecting the application. The Village had virtually never before approved a partial building permit.[5] Moreover, it is undisputed that the structure violated the height limit in the zoning variance that had been granted at the outset of construction. It was surely not a certainty nor a clear likelihood that state law would later be construed to require issuance of a permit notwithstanding that zoning noncompliance. In fact, when a further variance was sought to accommodate the height of the structure, it was rejected by the ZBA, and the state court denied relief. *RRI Realty Corp. v. Hattrick*, 132 A.D.2d 558, 517 N.Y.S.2d 284 (App.Div.2d Dep't 1987). It is

no answer for RRI to argue that a state court found the ARB to have exceeded its jurisdiction and ordered issuance of the stage-two permit. *Prior* to the Article 78 proceeding, there was no clear likelihood that the state court would deem issuance of a partial permit to be required.

RRI's argument that the ARB forfeited its discretion by not acting on the application within the statutory thirty-day period, and thus was required to approve the permit, is also unavailing. It may be that on the thirty-first day, RRI was entitled to the permit, as a matter of state law, as the state court held. But RRI's claim to the permit, as a matter of constitutional law, cannot be fragmented into two claims, one subject to the ARB's discretion within thirty days and one subject to a mandatory duty to issue after thirty days. For purposes of a property interest under the Due Process Clause, the claim to the permit is indivisible. The ARB's discretion to deny the permit during the thirty-day interval deprived RRI of a property interest in the permit, regardless of how unlawful under state law the ultimate denial may have been.

In sum, we conclude, based primarily on an assessment of the powers of the ARB as they pertain to the undisputed facts of this case, that in advance of the state court ruling it could not reasonably be found that RRI had an entitlement to the stage-two permit, sufficient to invoke the protection of the Due Process Clause. As a matter of law, there was no property interest in the permit. Though the issue was submitted to the jury and it found the requisite property interest, its attention had been improperly focused primarily on the probability that the permit would be issued without adequate consideration of the discretion en-

---

**5.** The chairman of the ARB testified without contradiction that the ARB had never approved "part of a house as distinguished from a whole house." The Building Inspector acknowledged that in the past he had "possibly" issued a permit for a foundation so that work could proceed in advance of inclement weather, but the evidence is undisputed that no partial permits had been issued for a portion of structures, the remainder of which was not in conformity with code requirements. The stage-one permit for a kitchen, relied on by RRI, is not to the contrary, since that permit did not contemplate that other work would eventually be performed.

joyed by the issuing authority. The Village had unsuccessfully sought to redirect the jury's attention in its requested instructions. Our concern, however, is not simply with the jury charge but with the insufficiency of the evidence to take the property interest issue to the jury. In view of our conclusion, we need not consider whether denial of the permit violated substantive due process or whether the denial was the result of a policy that would give rise to municipal liability under section 1983.

The judgment of the District Court is reversed, plaintiff's cross-appeal is dismissed, and the case is remanded with directions to enter judgment for the defendants.

GARTH, Circuit Judge, dissenting:

Although a number of issues were raised and briefed by the parties, the majority opinion focuses solely on the threshold issue of whether RRI has demonstrated a property right which would support a constitutional claim. While I read the record in this case somewhat differently than the majority with respect to some of the subsidiary issues involved in this appeal, my major disagreement with the majority's holding is that I find that RRI has proved a property interest whereas the majority holds otherwise. The majority concludes that the record in this case is "insufficient to support a finding of a clear entitlement to the permit so as to establish a property interest protected by the Fourteenth Amendment." Maj. op. at 912. The record, however, is to the contrary. It is with respect to that issue, and that issue alone, that I think it appropriate to express my dissenting views. Thus, I will not venture beyond that subject in this opinion.[1]

## I.

The majority correctly notes that the law of this Circuit addresses claims such as

RRI's under the government benefit/due process line of cases. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court defined what constitutes property for the purposes of the due process clause. That definition controls our disposition here. The Court noted that property was created by the operation of state law:

> .... To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. ...
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709.

This court has had several occasions to apply the principles of *Roth* to cases where a local board has refused to grant some type of permit or authorization. In *Yale Auto Parts Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985), the court reviewed the claim of an auto parts dealer who alleged that the West Haven Zoning Board of Appeal's refusal to approve his application for a new business site, amounted to "arbitrary and capricious" behavior and violated his due process property rights. The district court granted the Zoning Board judgment on the pleadings.

In affirming the district court, this court held that the appropriate line of inquiry was whether the applicant had a legitimate claim of entitlement to the issuance of the certificate or license. The court held that the question as to whether an applicant had a claim of entitlement "depend[s] on wheth-

---

1. Southampton, among other issues, objects to the imposition of municipal liability under 42 U.S.C. § 1983. While in my judgment the district court acted properly in allowing for recovery against the Village of Southampton, I note that the majority does not address that issue, just as it does not discuss other subsidiary issues. In light of that circumstance, I too confine my discussion only to the question: did RRI establish a property interest?

er, absent the alleged denial of due process, there is either a *certainty or a very strong likelihood* that the application would have been granted." *Yale Auto Parts*, 758 F.2d at 59 (emphasis added).

In applying this principle to the facts of the *Yale Auto Parts* case, this court noted the broad discretion vested in the Zoning Board. Given this discretion, the court reasoned that the Zoning Board might properly have denied Yale's application in exercising its authority granted by state law, and therefore it was by no means a certainty or a strong likelihood that the appellant would have received the permit. Thus, the court affirmed the district court's judgment.

In *Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986), this court again addressed the principle announced in *Yale Auto Parts*. The plaintiff in *Sullivan* sought to recover for the Town's refusal to issue a Certificate of Occupancy and to accept the roads he had laid out. As in the instant case, the Town inexplicably refused to rule on Sullivan's application, and only did so after Sullivan brought a state court proceeding in the nature of a Writ of Mandamus. Again, as in the case before us today, Sullivan sought to recover for the damages he suffered by the time delay.

The district court granted summary judgment to the Town relying upon *Yale Auto Parts*. In reversing, this court clarified its holding in *Yale*. The court reiterated the "very strong likelihood standard" standard set forth in *Yale* but stated:

> By that standard we did not intend to remove from constitutional protection every application for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action; a theoretical possibility of discretionary action does not automatically classify an application for a license or a certificate as a mere "unilateral hope or expectation." On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.

*Sullivan*, 805 F.2d at 85.

The *Sullivan* court then noted that the Town had refused to grant the Certificate of Occupancy because the roads had not been accepted for dedication, despite the fact that there was no lawful basis for refusing the certificate on this ground. *Id.* The court also observed that, but for this unlawful reason, Sullivan's application conformed (given the posture of the case) in all other respects to the requirements for a Certificate of Occupancy, and that he was thus entitled to it. This court thus reversed and remanded the case to the district court for a trial.

In *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210 (2d Cir.1987), a developer, Dean Tarry, sought approval for a multifamily dwelling in Tarrytown, New York. The Town's Planning Board rejected the plan, and Dean Tarry brought an Article 78 proceeding in state court to compel approval.[2] The New York Supreme Court found that Dean Tarry's application had met all of the technical requirements and that the application should have been approved. In particular, the New York court found that the ordinance by which the Town had refused the application was invalid. The New York court directed that Dean Tarry's

---

**2.** An Article 78 proceeding is the means by which an aggrieved person can challenge the determination of a governmental or quasi-governmental body in New York State's courts. The statute governing these proceedings is found in the NYCPLR §§ 7801–06. Dean Tarry actually brought two Article 78 proceedings. In the first, the New York Supreme Court ruled that Dean Tarry was entitled to approval, and ordered the Planning Board to approve the plan. However, the New York Appellate Division reversed and remanded the case to the Planning Board to make factual findings. *See Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 211 (2d Cir. 1987). It is the subsequent proceeding after remand which is relevant here.

application be approved and the New York Appellate Division affirmed. *See Id.* at 211. The Town then amended its zoning ordinance so as to prevent approval of Dean Tarry's plan. Dean Tarry then filed a new plan which would comply with the new ordinance, but the Board never voted on this new plan as three members recused themselves, thus preventing a quorum from meeting.

Like RRI in the present case, Dean Tarry filed suit in federal court asserting due process violations, under § 1983, because approval of its initial application was denied. The district court granted summary judgment to the Town, holding, *inter alia* that Dean Tarry did not possess a property interest in the approval of its plan. This court affirmed, distinguishing *Sullivan* and noting that:

> In *Sullivan*, the unlawful requirement preventing approval of the builder's application came out of thin air; it is *not* derived from an existing legislative or administrative standard such as the Tarrytown zoning ordinance. *See Sullivan*, 805 F.2d 85. Having met all existing requirements, the *Sullivan* plaintiff clearly would have had a "certainty or a very strong likelihood" of success at the time he submitted his application.
>
> In contrast, Dean Tarry's application was rejected pursuant to a zoning ordinance, extant at the time Dean Tarry submitted its plan for approval, that conferred broad discretion on the Planning Board. As in *Yale Auto Parts*, this discretion, embodied in the governing law, prevented Dean Tarry's expectation of success from rising to the level of certainty required to give rise to a cognizable property right.

*Dean Tarry*, 826 F.2d at 213 (emphasis in original).

The most recent treatment of the *Yale Auto Parts* principle by this court appears in *Brady v. Town of Colchester*, 863 F.2d 205 (1988). In that case, Brady, the recent purchaser of a building being used for commercial purposes, was refused a Certificate of Use and Occupancy and a zoning permit by the Colchester Planning and Zoning Commission ("CPZC") on the grounds that his building was actually zoned for residential and not commercial purposes. Brady, by a mandamus proceeding brought in state court, ultimately forced the CPZC to provide him with the Certificate. Brady thereafter brought suit for damages in federal court under 42 U.S.C. § 1983, alleging that the CPZC had *inter alia*, deprived him of property, i.e., the zoning permit and the Certificate of Occupancy, in contravention of due process.

The district court granted summary judgment to Colchester. This court noted that if the property had been zoned for commercial use, the CPZC would have had no power under Connecticut law to deny Brady a Certificate of Occupancy, and therefore was acting beyond its authority. The *Brady* court concluded that if the CPZC did not have the authority to act as it did under Connecticut law, then the *Yale Auto Parts* test would be satisfied and Brady would have established a protectible property interest. The case was remanded to the district court for a trial to determine the zoning status of the property in question.

I believe the standard to be distilled from these cases is as follows: as with all government benefit/due process cases, the inquiry must focus on the legitimate expectations of the party seeking the government benefit. If the government is afforded broad discretion in conferring the benefit, and articulates reasons for denying the benefit within that discretion, then a plaintiff cannot prevail in establishing a constitutionally protected property interest. However, where the government's discretion is limited by law and the government acts outside that limitation, or where the government's articulated reason for denying the benefit is without basis in law, and no other lawful impediment to granting the application exists, then a plaintiff may assert an entitlement sufficient to support a

constitutional claim. My reading of the majority opinion reveals no difference between the standard the majority employs and the standard I have set forth here.

## II.

I turn now to the task of applying this standard to the facts of this case. In my view, the key to resolution of this appeal lies in the undisputed fact that although the Architectural Review Board was required by law to act within 30 days of the receipt of RRI's application for a permit, it did not do so. Section 116–32E. of the Village of Southampton Code requires that the ARB act upon applications for building permits within 30 days. That provision reads:

> E. The failure of … the Board to approve an application or of the Board to hold a hearing on any application which may have been referred to it, within thirty (30) days, or to render its decision within ten (10) days of the closing of the hearing thereon, shall entitle the applicant to prompt issuance of a building permit, provided that all other applicable requirements have been satisfied.

As I have just noted, it is undisputed that the ARB and the building inspector failed to act upon RRI's application within the prescribed time period mandated by Village Code § 116–32E. By failing to act within the stated 30 day period, the ARB and the building inspector became bound by the Code to issue RRI's building permit.

The New York Supreme Court, in its opinion holding that RRI was entitled to the stage two building under state law, made a number of factual findings which are entitled to be given effect under the doctrine of collateral estoppel or issue preclusion. *See Petrella v. Siegel,* 843 F.2d 87, 90 (2d Cir.1988). Among other things, that court found:

> The Code prescribes that the building inspector must either approve or disapprove of building permit applications within sixty (60) days of their submission. See Code § A119–3(A).

In addition, the Code requires that the Architectural Review Board hold a public hearing on any application referred to it for consideration which a committee of the Board had failed to approve. See Code § 116–32(B), (E). The public hearing must take place within thirty (30) days of the reference of the application to the Board and the Board must render its decision within ten (10) days of the hearing. See Code § 116–32(E). The petitioner commenced this proceeding on June 1, 1984. By that date, the sixty days which the Code (§ A119–3[A]) affords the building inspector to approve or disapprove a building permit application had passed without an approval or disapproval. Moreover, by June 1, 1984, the thirty days which the Code (§ 116–32[E]) affords the Architectural Review Board to hold a public hearing on any permit application referred to the Board but not approved by a Board Committee had also passed without a hearing.

\*     \*     \*     \*     \*     \*

Respondents final argument that the building permit application fell into the category of not meeting "other applicable requirements" as that language is found in § 116–32(E) of the Code must be dismissed. The Stage Two building permit application by its very terms as devised by the building inspector represented construction of the pre-existing building in conformance with the zoning ordinance. …

\*     \*     \*     \*     \*     \*

…. The respondents abrogation of the statutorily-prescribed time limits in failing to hold a hearing and rendering a determination as to the building permit application mandates a direction compelling the issuance of the permit. …

(A. 336, 337, 338).

Thus, after the 30 day period had expired, the building inspector, Romano, and the ARB no longer had any discretion to deny a permit, and RRI is correct in claiming that as a matter of law it became

entitled to the permit. *See e.g. Sullivan,* 805 F.2d at 85. Indeed the jury, which was provided with a copy of the Village Code when it commenced its deliberations, concluded as much in finding for RRI.

Not surprisingly, neither the majority opinion nor the defendants offer any meaningful, let alone convincing, refutation of this argument. The Southampton defendants in their Reply Brief, argue that RRI cannot rely on § 116–32E. of the Village Code because that section provides for the issuance of permits only if the building complies with the Code and that despite the express provisions of § 116–32E., no property right can be created simply because of the passage of time. Reply Brief of the Village of Southampton at 12–13. In so stating, however, the Southampton defendants ignored, and did not respond to, the fact that the Building Inspector, Romano, had signed the building permit form on May 4, 1984 (E. 259; T. 379), thereby establishing the fact that "all other applicable requirements" had been satisfied (Village Code § 116–32 E.), just as the New York State court found in the Article 78 proceeding. Indeed Romano himself had informed RRI of the permit's issuance. (T. 1478–79). Moreover, the Southampton defendants, as well as the majority opinion, completely ignore the highly significant concession made in the opening statement by counsel for the ARB:

> .... Of interest is the requirement in the village rules to make sure that the architectural review system does not slow things down where people are entitled to action.
>
> *If no action is taken within thirty days after a submission, then it is considered to be the equivalent of a grant.* So whatever the judgment of the architectural board was or was not at that time, whether it was agreeable or not agreeable, after thirty days it became irrelevant.

(S.A. 47–48) (emphasis added).

The majority's treatment of RRI's thirty day argument is even less persuasive. The majority opinion concedes that: "It may be that on the thirty-first day, RRI was entitled to the permit as a matter of state law, as the state court held." Maj. op. at 919. However, the majority then proceeds to formulate a principle that to my knowledge has no precedential support in any body of law. The majority holds that constitutionally, RRI cannot assert that it acquired a property interest in its pending permit when the ARB failed to act within the thirty day period prescribed by the Village Code. The reason given by the majority is that while the ARB had discretion to grant or deny a permit during the prescribed thirty day period, that lawful discretion also "... deprived RRI of a property interest in the permit, regardless of how unlawful under state law the ultimate denial may have been." Maj. op. at 919. This is so, claims the majority, because "... RRI's claim to the permit as a matter of constitutional law, cannot be fragmented into two claims, one subject to the ARB's discretion *within* thirty days and one subject to a mandatory duty to issue *after* thirty days." (emphasis added.)

Unfortunately, the majority has failed to inform us where this law of "non-fragmentation" originates and what provision of the Constitution forbids the acquisition of a property interest when the relevant legislation decrees otherwise. In effect, the majority's holding announces a new and novel principle of state law, that when appropriate legislation vests discretion in a governmental body for a discrete period of time (here, thirty days) and then the same legislation divests that discretion after the prescribed time period has expired, that nevertheless somehow the discretion remains. The majority cites to no state, federal or statutory authority in support of this principle. Indeed, this is not surprising since the majority's reasoning on this point directly conflicts with the established precedent of this Circuit. In *Sullivan v. Town of Salem, supra,* this court clearly stated:

> ... we did not intend to remove from constitutional protection every applica-

tion for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action; a theoretical possibility of discretionary action does not automatically classify an application for a license or a certificate as a mere "unilateral hope or expectation." On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.

*Sullivan*, 805 F.2d at 85.

When the ARB did not act, as it was bound to do within the stated 30 day time limit, RRI's right to a building permit for the stage two construction became vested. No discretionary action of the ARB could divest that right or change that result. Indeed the record clearly reveals no evidence that the Village Code means anything other than what its plain language states. It is significant to me that although the majority opinion and the Southampton defendants baldly assert that § 116–32E. cannot create a property right simply because the time has expired, they point to no evidence, and can provide no legal citation supporting that proposition. If the law of this Circuit is to be consistently applied, it is evident to me that RRI's application for a permit had a very "strong likelihood" of being granted, *Yale Auto Parts*, 758 F.2d at 59, given the fact that the ARB had been deprived of any discretion by its failure to act within thirty days.

My analysis is bolstered by the jury verdict which, under appropriate legal instruction from the district court, found that a property interest existed. I too am troubled by the fact that the district court found it necessary to submit the issue of whether there was a property interest to the jury rather than deciding that issue as a matter of law for the court.[3] Nevertheless, the jury, with all of the evidence before it, including the Village Code in which § 116–32E. appears, found that RRI had a property interest warranting constitutional protection. It did so pursuant to the district court's charge, which correctly set forth the relevant law in this area:

The property which plaintiff asserts it was deprived of is its asserted right to the issuance of the second stage building permit in order to continue building or construction.

In connection with this claim I instruct you that a property interest for the purposes of the Fifth and Fourteenth Amendments include not only things that we have an absolute right to, such as things we can own or possess out right [sic], but also such things as to which we have not simply a hope or expectation of acquiring, but a very strong likelihood of acquiring.

Accordingly, if you find by a preponderance of the evidence that there existed a very strong likelihood that but for a defendant denying the plaintiff due process of law, that the plaintiff would have obtained the building permit for second stage construction, then you may find that the plaintiff possessed a property interest in the issuance of the building permit.

(T. 2432).

Thus, even if the district court erred in submitting to the jury for determination, what would appear to be a matter of law, that error was obviously harmless because the jury reached the only result that it

---

**3.** The majority opinion treats this issue in a somewhat equivocal manner. Early in its opinion it states "In the view we take of the case, it becomes necessary to consider only the threshold issue of whether the evidence sufficed to create a jury issue as to whether RRI had a property interest in the stage-two permit." Maj. op. at 914. However, later in the majority opinion, the majority states: "Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an application has a property interest will normally be a matter of law for the court." Maj. op. at 918.

could reach in light of the undisputed fact that the Board had exceeded its permissible time limit when it failed to act on RRI's application.

### III.

I appreciate the reluctance of the majority to "become [a] zoning board of appeal in reviewing non-constitutional land use determinations made by the Circuit's many local legislative and administrative agencies." *See Sullivan v. Town of Salem*, 805 F.2d at 82 (2d Cir.1986). However, that reluctance, I suggest, must give way to the established law of this Circuit when the record discloses, as this record does, not only a "very strong likelihood" that a permit would have been granted, but as appears in this case, a "certainty" that it had to have been granted.

The linchpin in this case, as I have pointed out, was the failure of the ARB to act within the time prescribed by the Village Code. When that time expired, the right of RRI to a building permit vested and could not be defeated. The majority opinion fails to explain adequately why this right does not constitute a valid property interest protected under the Fourteenth Amendment. Nor does the majority give a reasoned explanation as to why, on the thirty-first day after the ARB failed to act, RRI did not have either a "certainty or very strong likelihood" that its application would have been granted. *Yale Auto Parts*, 758 F.2d at 59.

Of even greater importance is the fact that the majority opinion disregards this court's prior pronouncement and holding in *Sullivan v. Town of Salem*, 805 F.2d 81 (2d Cir.1986), where the court recognized that an applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation, the application would have been granted. The *Sullivan* court, in so holding, acknowledged that a mere theoretical possibility of discretionary action could not defeat an applicant's property interest expectation. *Sulli-*

*van*, 805 F.2d at 85. Here, of course, we do not even have a theoretical possibility of discretion remaining in the ARB *after* the thirty day period had expired without the ARB having taken action. But even if such a theoretical vestige of discretion was retained by the ARB, under *Sullivan* that vestige or theoretical possibility would still be insufficient to defeat RRI's property interest claim.

I am thus unable to reconcile the majority's application of the *Yale Auto Parts* standard or the majority's reading of *Sullivan v. Town of Salem* with this Circuit's jurisprudence to date. The majority's holding here can lead only to confusion in this area of the law. It is for that reason that I dissent. Contrary to the majority therefore, I would hold that RRI had a legitimate claim of entitlement to the issuance of its building permit—a claim constituting a property interest sufficient to invoke constitutional protection. I would affirm the judgment of the district court.