BECKER, Circuit Judge,
dissenting.
Nothing is more central to the regime of federal civil procedure than the principle of notice and opportunity to be heard. This appeal is from an order of the district court that granted plaintiff’s motion to remand a removed case back to the state court on the ground that the defendant had not demonstrated sufficient damages to support subject matter jurisdiction, without affording defendant notice and an opportunity to be heard, even by a simple letter memorandum, on the question whether a dispute existed as to the existence of jurisdictional amount.[1] The majority blesses this procedure. I cannot.
Section 1447(c) authorizes such remand where “it appears that the district court lacks subject matter jurisdiction.” I do not see how a deficiency can “appear” unless the party opposing the remand can say at least something about the matter, and hence I read section 1447(c) as requiring at least minimal notice and opportunity to be heard. In my view, the majority’s crabbed and rigid reading of section 1447(c), which gives rise to an egregious departure from bedrock principle, is unsustainable. The majority’s defensive statement that “section 1447(d) also allows a district court to be procedurally unfair,” Maj.Op. at 743, is as startling as it is distressing.
Nor do I think that we would violate- section 1447(d) by reviewing this remand order. Our opinion in Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir.1989), holds that when the district court does not comply with the requisites of section 1447(c), section 1447(d) does not shelter a remand order from review. If, as I believe, section 1447(c) requires an opportunity to respond before remand may *752 be ordered, then that is as much one of “the parameters of a district court’s statutorily defined power to remand under 28 U.S.C. § 1447(c),” Maj.Op. at 743, as the holding of Air-Shields that sua sponte remands cannot be ordered after the 30 day time limit. In short, I cannot conceive that either the district court’s admittedly broad remand power under section 1447(c) or the delay avoidance policy of section 1447(d) renders a district court’s ex parte determination that it lacks subject matter jurisdiction, made without notice or opportunity to be heard, inviolate and unreviewable. This is especially so in a case such as this where the district court is remanding for the second time.
Because the district court did not offer notice and an opportunity to be heard, even minimally, it acted in excess of its authority in entering the remand order, and as a result, section 1447(d) does not bar review thereof.[2] I would therefore grant Liberty Mutual’s petition for writ of mandamus and direct the district court to allow Liberty Mutual to respond to Ward Trucking’s remand motion before ruling upon it. These views are informed not merely by my sense of the fundaments of our judicial policy, but also by a venerable history, with which I begin.
I. § 1447(c) AND the Requirement OF NOTICE AND OPPORTUNITY TO Be Heard

A. Origins of the Statutory Remand Power

The remand power currently embodied in section 1447(c) originally required district courts in all cases to give the affected parties notice and an opportunity to be heard before remanding for a lack of jurisdiction. Section 1447(c) had its genesis in the Judiciary Act of 1875. Section 5 of the Act provided:
That if, in any suit commenced in a circuit court or removed from a State court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall take such order as to costs as shall be just; but the order of said circuit court dismissing or remanding said cause to the State Court shall be reviewable by the Supreme Court on writ of error or appeal, as the case may be.
Act of March 3, 1875, ch. 137, § 5, 18 Stat. 472 (emphasis supplied). At that time circuit courts were federal trial courts, and so, under this act, the trial court was directed to remand an action if, inter alia, “it shall appear to [its] satisfaction ... that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of’ the court.[3]
That this provision should be interpreted as containing a requirement that the trial court hear from the affected parties before remanding is shown by the Supreme Court’s opinion in Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889). That case involved an appeal from the circuit court for the Middle District of Alabama. The plaintiff, a recent Alabama citizen and resident *753 claiming to be a Tennessee citizen, had filed suit against defendants who were citizens of Alabama. The defendants moved to dismiss, arguing that the court lacked jurisdiction because the plaintiff was actually an Alabama citizen. After considering affidavit and deposition testimony, “and after argument by counsel for the respective parties,” the court denied the motion. Id. at 321, 9 S.Ct. at 291 (emphasis supplied). When the plaintiff prevailed on final judgment, the defendants appealed.
Not reaching other, substantive questions presented by the appeal, the Supreme Court concluded that the circuit court should have dismissed the case under section five of the Judiciary Act of 1875. Id. at 324-25, 9 S.Ct. at 292. The court explained that if the plaintiff had not changed his state of citizenship to Tennessee, the circuit court was obliged to dismiss the suit for lack of jurisdiction. Interpreting the statute, the Court explained that
this duty arose only when it appeared to the satisfaction of the court that the suit was not one within its jurisdiction. But if the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further, and to dismiss the suit; and its failure or refusal to do what, under the law applicable to the facts proved, it ought to do, is an error....
Id. at 325, 9 S.Ct. at 292. This duty comes into play whenever the court determines that jurisdiction is lacking, for “the court is bound to ask and answer [the jurisdictional question] for itself, even when not otherwise suggested,” id. at 326, 9 S.Ct. at 292 (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)). Moreover, and more to the point,
the statute does not prescribe any particular mode in which such fact [the lack of jurisdiction] may be brought to the attention of the court. It may be done by affidavits, or the depositions taken in the cause may be used for that purpose. However done, it should be upon due notice to the parties affected by the dismissal.
Id. (emphases supplied).
Thus, although the Supreme Court concluded that lack of jurisdiction was manifest from the record before the circuit court, and hence that the court erroneously failed to dismiss the case in compliance with the substance of section five, id. at 328-29, 9 S.Ct. at 293, the Court was nonetheless satisfied that the circuit court had complied with section five’s procedural strictures:
In the case before us the question [of subject matter jurisdiction] was formally raised, during the progress of the cause, by written motion, of which the plaintiff had due notice, and to which he appeared and objected. So that there can be no question as to any want of opportunity for him to be heard, and to produce evidence in opposition to the motion to dismiss.
Id. at 327-28, 9 S.Ct. at 293 (emphases supplied).
The court distinguished this case from Hartog v. Memory, 116 U.S. 588, 6 S.Ct. 521, 29 L.Ed. 725 (1886). There, although the complaint properly alleged diversity jurisdiction, the defendant did not challenge the citizenship allegations until after receiving an unfavorable verdict. The Supreme Court said that
if, from any source, the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties or in any other way, it may at once of its own motion cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for- its own protection against fraud or imposition....
Id. at 591, 6 S.Ct. at 522 (quoted in Morris, 129 U.S. at 327, 9 S.Ct. at 292-93) (emphases supplied). The Morris Court contrasted the actions of the circuit court in its case with those of the trial court in Hartog, which had
summarily dismissed the action, upon the ground solely of want of jurisdiction, without affording the plaintiff any opportunity whatever to rebut or control the evidence upon the question of jurisdiction.
Morris, 129 U.S. at 327, 9 S.Ct. at 293 (emphasis supplied). The trial court’s failure to give the plaintiff an opportunity to be heard before dismissing for lack of jurisdiction was *754 enough to warrant the Supreme Court’s reversing the order of dismissal and remanding for further proceedings. Id. Thus, the Supreme Court read section five as requiring that the trial court provide the affected parties with notice of its intent to remand, i.e., to rule on the existence of subject matter jurisdiction, as well as an opportunity to be heard.

B. Evolution of Section lW(c)

Nothing in the subsequent evolution of section 1447(c) from section five of the Judiciary Act of 1875 forward demonstrates an intent to abrogate the salutary restriction described above, i.e., that the (original) statutory power of the federal trial courts to remand for lack of jurisdiction required that remand orders be entered only after giving the affected parties notice and an opportunity to be heard. The following discussion of the evolution of section 1447(c) does not, for the most part, treat the companion development of the bar on appellate review of remand orders now expressed in 28 U.S.C. 1447(d), for the point of the discussion is to show that section 1447(c) should be held to require district courts to give notice and an opportunity to be heard to the parties before remanding a removed case. Once that is demonstrated, section 1447(d) ceases to be a problem because that section does not bar review of an order entered in excess of the district court’s authority.
Section five was modified by the Judiciary Act of 1887, which repealed the provision allowing review of remand orders “on writ of error or appeal.” See Act of March 3, 1887, ch. 373, §§ 2, 6, 24 Stat. 552. The provision authorizing remand for lack of jurisdiction, however, was unaffected by the 1887 act (or by the 1888 act correcting errors in the enrollment of the 1887 act, Act of August 13, 1888, ch. 866, 25 Stat. 438). State of Minnesota v. Northern Sec. Co., 194 U.S. 48, 65, 24 S.Ct. 598, 602, 48 L.Ed. 870 (1904); Waite v. City of Santa Cruz, 184 U.S. 302, 325, 22 S.Ct. 327, 335, 46 L.Ed. 552 (1902).
In 1911, Congress codified the Judicial Code. Act of March 3,1911, eh. 231, 36 Stat. 1087. Aside from not resurrecting the repealed reviewability provision, the 1911 act re-enacted section five’s remand provision almost verbatim. Act of March 3, ch. 231, § 37, 36 Stat. 1098. Thus, the 1911 Code displays no intent to eliminate the notice- and-hearing requirement.
The 1948 re-codification of the Judicial Code and the 1949 corrections thereto produced the remand provision’s next change in form. See Act of June 25, 1948, eh. 646, § 1447, 62 Stat. 869, 939, amended, Act of May 24, 1949, ch. 139, § 84, 63 Stat. 89, 102. As a result of these changes, the new 28 U.S.C. § 1447(c) read (with emphasis supplied):
If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of costs.
Again, as the Supreme Court has explained, the change from the 1911 Judicial Code to section 1447 was “no[t] inten[ded] to change the prior law substantively,” but was meant “to recodify the pre-1948 law without material change insofar as the provisions of §§ 71 and 80 of the old Code here relevant were concerned.” Thermtron, 423 U.S. at 350 n. 15, 96 S.Ct. at 592 n. 15.[4]
Moreover, the “it appears” language carried through the re-codification, albeit with minor modification: the statute dropped the modifier “to the satisfaction of the district court” (and switched from the future to the present tense). The elimination of court-centered language from the requirement that the lack of jurisdiction “appear” moves in the opposite direction of what one would expect if Congress intended to delete a requirement that courts give parties notice and an opportunity to be heard before remanding cases for lack of subject matter jurisdiction. Thus, *755 the requirement, still in effect in the Judicial Code of 1911, survived re-codification in 1948.
The current version of section 1447(c),
A motion to remand the ease on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the ease shall be remanded.
28 U.S.C.A. § 1447(c) (1994), results from one of many amendments to the Judicial Code made by Congress in 1988. See Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100-702, 102 Stat. 4642. The two sentences of this version of section 1447(e) were produced by splitting up the sole sentence of the pre-amendment provision. In doing so, Congress replaced the two prior authorized remand grounds — if a case was removed “improvidently,” or if a case was removed “without jurisdiction” — with, respectively, a sentence authorizing remands of eases for a “defect in removal procedure” and one authorizing remands for a “lack[ of] subject matter jurisdiction.” See Rothner v. City of Chicago, 879 F.2d 1402, 1411 & n., 7 (7th Cir.1989). The scanty legislative history .of this change (a mere two paragraphs), see H.R.Rep. No. 100-889, 100th Cong., 2d Sess. 72 (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6033; see also 134 Cong.Rec. S16284, S16308 (daily ed. Oct. 14, 1988); Court Reform and Access to Justice Act: Hearings on H.R. 3152 Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm, on the Judiciary, 100th Cong., 1st & 2d Sess. 97-98 (1987-1988), reveals no intent to change the requirements for district court remands, other than to require that motions for remands for removal procedure defects be made within thirty days of removal. Importantly, the statute retained (without change) the operative phrase, “it appears.”

C. Consistency with Judicial Policy

As the foregoing analysis shows, section 1447(c) requires the district court to give the affected parties notice and an opportunity to be heard before remanding a case. This makes sense, for subject matter jurisdiction — although a threshold issue — is not something fit for judicial notice, and the law and facts of a given ease must generally be determined, in our adversary system, by the court, after hearing from the interested parties.[5]
More specifically, district courts are obligated to listen to the affected parties before dismissing a case for lack of subject matter jurisdiction. We have explained this in Neiderhiser v. Borough of Berwick, 840 F.2d 213, 216 n. 6 (3d Cir.1988). There, the district court had dismissed the plaintiffs action for lack of subject matter jurisdiction because it concluded, sua sponte, that the suit did not present a live case or controversy. Id. at 216. The fact that the district court sua sponte. considered dismissal was not a problem in itself, but the procedure used was impermissible:
While the district court’s consideration of the jurisdictional issue sua sponte was proper, the court did not afford the parties the opportunity to brief or present evidence on this issue. We find this lack of opportunity to be heard improper. The court below should have allowed [the plaintiff] sufficient time to present evidence or otherwise respond on the issue of jurisdic *756 tion before it determined that none existed.
Id. at 216 n. 6 (emphases supplied). We did not need to remand there only because — on the extant record — we ruled in favor of the plaintiff, holding that subject matter jurisdiction existed.
As a general matter, the district court is required to give parties notice and an opportunity to be heard before remanding a removed ease. See Local 336, American Federation of Musicians, AFL-CIO v. Bonatz, 476 F.2d 433, 437 (3d Cir.1973) (“Even on [issues of jurisdictional fact] the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.”) (emphasis supplied); Prakash v. American Univ., 727 F.2d 1174, 1179-80 (D.C.Cir.1984) (“When subject matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the ease, and in so doing, it may resolve factual disputes. The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally it may rely upon either written or oral evidence. The court must, however, afford the nonmoving party ‘an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.’ ”) (quoting Gordon v. National Youth Work Alliance, 675 F.2d 356, 363 (D.C.Cir. 1982) (Spotswood W. Robinson, III, C.J., concurring)).
While these cases go to jurisdictional facts, I do not see why their reasoning is not also applicable to “jurisdictional law.” Indeed, in the instant case, Liberty Mutual contends that the district court adopted verbatim Ward Trucking’s mistaken view of the requirements of 28 U.S.C. § 1446(b) for establishing amount in controversy, and that this error led the district court incorrectly to conclude that the plaintiff could not use discovery responses to support removal. In Liberty Mutual’s submission, the district court’s confusion as to jurisdictional law led the court to conclude incorrectly that Liberty Mutual had not shown a jurisdictional fact, i.e., an amount in controversy in excess of $50,000. See discussion in the margin.[6]
*757 These views are strongly supported by the discussion in In re Continental Casualty Co., 29 F.3d 292, 294 (7th Cir.1994), where the Court of Appeals for the Seventh Circuit held that section 1447(c) does not authorize district courts to remand eases for procedural defects absent a motion by a party. In so concluding, the court stressed the importance of hearing from the affected parties:
By acting without any motion, district judges increase the risk of error — both legal error and error in understanding the parties’ desires. Ours is an adversarial system, and courts rely on lawyers to identify the pertinent facts and law. In this case the district judge stated the facts correctly but apparently was unaware of eases that had discussed the issue and reached conclusions at odds with his own. Perhaps these other cases are incorrect; we have no views on the subject. But the district court should have solicited the parties’ submissions before acting, to avoid what has happened in this case — extended disputation, potentially leading to another change of forum. If the district judge should entertain the parties’ views before remanding a case, then he also ought to wait for a motion....
Id. at 295 (citation omitted). Because the court of appeals required the district court to hear from the parties before remanding, it concluded that the district court could not sua sponte remand on the grounds of procedural defect. See id. Although the plaintiffs ability to waive procedural defects supported the court’s conclusion that district courts must await a party’s motion before remanding for procedural defects, id., the independent requirement that district courts must “solicit the views of the parties” flowed from the more general concerns about risks of error in light of the nature of our adversarial court system.[7]

D. Consistency with Congressional Policy

This construction of section 1447(c) accords with the policy underlying section 1447. Certainly, in curtailing review of remands issued for lack of jurisdiction, Congress did seek “to make the judgment of a district court remanding a case final and conclusive in order to avoid the delay caused by appellate review of remand decisions.” Maj.Op. at 6 (emphasis supplied). But by concluding that the risk of erroneous remand orders was not great enough to outweigh the threat posed by protracted litigation over jurisdictional questions, Congress must have presupposed the exercise of judgment. Cf. Kloeb v. Armour & Co., 311 U.S. 199, 201, 204, 61 S.Ct. 213, 215-16, 85 L.Ed. 124 (1940) (where, on plaintiffs remand motion, district court took evidence before deciding to grant remand, remand was unreviewable, for the remand statutes “entrust determination concerning such matter to the informed judicial discretion of the district court”) (emphasis supplied). That expectation would conform with my view that section 1447(c) requires the district court to afford the affected parties notice and opportunity to be'heard before it remands cases to state court.
The assumption that district courts arrive at reasoned remand decisions, unlikely to be wrong, also underlies the decision of In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir.1991), and supports my conclusions here. As the majority relates, that ease held that section 1447(d) did not bar review of a district court’s remand order that was based on the lack of subject matter jurisdiction flowing from the district court’s *758 determination that the act giving rise to federal question jurisdiction was itself unconstitutional. Maj.Op. at 747i How was this court able to review the remand order, “plainly within the bounds of § 1447(c),” Gravitt, 430 U.S. at 723, 97 S.Ct. at 1440, without offending section 1447(d)? Because we concluded that “the jurisdictional determination of the district court ... was not the type of federal subject matter jurisdiction decision intended to be governed by the terms of or the policy underlying section 1447(c).” Maj.Op. at 747 (quoting TMI Litigation, 940 F.2d at 845) (internal quotation marks omitted). As the majority here explains, “the ruling which triggered the remand order was not the routine type of jurisdictional determination ... which Congress entrusted to the district courts[.]” Id. (emphasis supplied).
TMI Litigation might be distinguished on the grounds that it involved a distinction among the. subject matters of district court determinations, rather than the procedures, but it supports my view that Congress did not expect district courts to accept verbatim a moving party’s statement of the law without listening to the opposing party’s views, for that is not a “routine” method of making judicial decisions. Given that judges are human, a court that would rule without listening is appreciably more likely to err than one that considers both sides’ input. Since we ordinarily do not scrutinize district courts’ subject matter jurisdiction remand decisions for substantive error, it is critically important that wé preserve the prophylactic requirement that the court hear first from the parties before remanding. Indeed, providing notice and an opportunity to be heard may even reduce delays, for by reducing the chances of erroneous remands, this rule makes it less likely that parties will need to remove actions more than once (where the time period permits) in order to use a subsequent removal notice to explain the governing law to -the district court.
This construction of 1447(c) is also consistent with. Supreme Court precedent on re-viewability, of remand orders. In Thermtron, the district court had entered an order to show cause as to why the case should not be remanded and the parties had responded to that order. See Thermtron, 423 U.S. at 339-40, 96 S.Ct. at 587. In Gravitt, 430 U.S. at 723, 97 S.Ct. at 1439, the district court had afforded the removing defendant an opportunity to be heard before granting the plaintiffs remand motion. See 416 F.Supp. 830, 831 & n. 2 (1976).

E. Summary

In conclusion, the Supreme Court early on held that remands under the 1875 forerunner of section 1447(c) required that the affected parties first be given notice and an opportunity to be heard. Nothing in the subsequent development of the remand provision was intended to abolish this requirement, which does not conflict with section 1447(d)’s underlying policy of avoiding delay. I must therefore disagree with the majority that section 1447(c) authorized the district court to remand without first allowing Liberty Mutual to respond to Ward Trucking’s remand motion.
II. § 1447(d) AND Reviewability of the District CouRt’s Remand ORDER
Because the district court failed to provide Liberty Mutual an opportunity to be heard before remanding, its remand order was unauthorized. As a result, under our remand reviewability jurisprudence, section 1447(d) does not prevent us from issuing a writ of mandamus to compel the district court to remain within the bounds of its authority by awaiting Liberty Mutual’s response to Ward Trucking’s remand order. I elaborate on these points as follows.

A. Reviewability of Procedurally Unauthorized Remand Orders

Our opinion in Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir.1989), dictates the conclusion that remand orders entered in a manner not authorized by section 1447(c) are reviewable despite the limitations in section 1447(d). In Air-Shields, the district court sua sponte remanded a case that it concluded had been filed Untimely and without a required surety bond. Id. at 64-65. Because we determined that section 1447(c) would not *759 have allowed the district court to remand for these procedural defects outside thirty days from the filing period,[8] id. at 65, we concluded that by doing so “the district court exceeded its statutorily defined power,” id. at 66 (quoting Thermtron, 423 U.S. at 351, 96 S.Ct. at 593) (internal quotation marks omitted). Thus, we were not barred by section 1447(d) from issuing a writ of mandamus directing the district court to vacate its remand order. Id.
The situation here is analogous. Since, as I have shown, notice and an opportunity to be heard before remand are “essential to action under ... § 1447(e), then the lack [thereof] deprives a district judge of power to return a case to state court.” Continental Casualty Co., 29 F.3d at 294. By granting Ward Trucking’s motion to remand without allowing Liberty Mutual to respond, the district court here exceeded its statutorily defined power. I of course agree with the majority that “only remand orders issued under § 1447(c) and invoking the grounds specified therein ... are immune from review under § 1447(d).” Maj.Op. at 745 (quoting Thermtron, 423 U.S. at 346, 96 S.Ct. at 590) (internal quotation marks omitted and emphasis supplied here). But the district court’s failure to give Liberty Mutual notice and opportunity to be heard precluded this from constituting a “remand order issued under § 1447(c).”

B. Unauthorized Action or Unreviewable Error

While the majority does not address the Air-Shields analysis, it responds to Liberty Mutual’s arguments by attacking the construction of section 1447(c) discussed above, accusing Liberty Mutual of “equat[ing] error with unauthorized action.” Maj.Op. at 750. This remonstrátion, however, is misdirected.
The section 1447(c) requirement that district courts hear from the parties before remanding does not, as the majority believes, dictate that “every erroneous remand decision would be reviewable.” Id. Rather, since the district court’s authority to remand a removed case extends to all situations where it finds a lack of subject matter jurisdiction after allowing the parties notice and an opportunity to be heard, the courts of appeals would review only those decisions where the district court fails to listen to the parties before remanding. If the court receives argument from each side before acting yet still remands for lack of subject matter jurisdiction, review would generally be unavailable, regardless of how erroneous the court may have been in its jurisdictional determination.
Indeed, the majority is itself guilty of conflating error with unauthorized action. I agree that Thermtron and Gravitt teach that “when a district court exercises its power to remand under section 1447(c), section 1447(d) allows a district court to err.” Id. However, it does not as a matter of logic “necessarily follow[] that section 1447(d) also allows a district court to be procedurally unfair.” Id. The majority’s deduction would be sound only if procedural unfairness were merely one more form of error. But that cannot be, for to so hold would undermine the legitimacy of our procedural system. Procedural fairness is the predicate of legitimacy. And since (concomitantly) section 1447(e) does not authorize judges to remand without hearing from the parties, a district court does not exercise “its power to remand under section 1447(c)” when it remands as the district court did here, for it possesses no such power. Such conduct would not then be an “error” permitted to stand by section 1447(d) any more than would be the remand at issue in Thermtron, which was entered for docket control reasons; both actions are ultra vires.
The majority’s reasoning is therefore either circular' or inconsistent with Thermtron. The majority’s confident assertion that “Ijjust as section 1447(d) prohibits our review of the merits of a remand order that falls within the parameters of section 1447(c), it prohibits our review of the manner by which sueh an order is rendered,” id. (em-' phasis supplied), begs the question: Does a remand entered without hearing from the removing party “fall within” section 1447(c)? *760 Since, as I have argued, it does not, section 1447(d) is no bar to our review.
III. Conclusion
I believe that the majority errs in construing section 1447(c) to authorize district courts to issue remand orders without giving the parties notice and an opportunity to be heard. Fortunately, the damage this holding does to remand jurisprudence may in time prove to be circumscribed, for nothing in the majority’s opinion today requires district courts to engage in this constitutionally dubious practice.[9] Courts might never need to address this question if district courts would in the future give the notice and opportunity to be heard of which I have spoken. This would not undermine section 1447’s policy of delay avoidance because, unless the district court desires to extend it, the substantive remand ruling can be made without elaborate filings or procedures.
For the foregoing reasons, I respectfully dissent.

. I agree with the majority opinion’s conclusion that the remand order at issue here was "jurisdictional,” rather than one based on a "defect in removal procedure." Maj.Op. at 747.

. The majority opinion makes much of Aliota v. Graham, 984 F.2d 1350 (3d Cir.), cert. denied, U.S. -, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), and Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994). The discussion of these cases, however, is besides the point. No one argues that the remand order at issue here was was anything but a jurisdictional remand based on a non-constitutional, nonseverable determination that the requisite amount in controversy had not been established. The real question is whether the district court entered its remand order in a manner authorized by section 1447(c), in which case the reviewability bar of section 1447(d) applies, or whether the district court exceeded its authority by remanding without first offering to Liberty Mutual notice and an opportunity to be heard, in which case we may review the remand order. Thus, Air-Shields is the controlling precedent, as explained infra Part II.

. The court might also dismiss, since this provision governed both removed actions and ones originally filed in the circuit courts.

. Although the dissent in Thermtron was less sanguine than the majority that no change was intended by the 1948 re-codification, see Therm-tron, 423 U.S. at 359-60, 96 S.Ct. at 597 (Rehnquist, J., dissenting), it offered no evidence of the type of “changes in substance” that were intended, id. at 360, 96 S.Ct. at 597, and at all events, the language relevant here — the intact provision that the lack of jurisdiction shall "appear”— remained. See infra.

. The majority's invocation of cases where the court sua sponte raised the issue of subject matter jurisdiction is not to the contrary. The practice at least of this Circuit is to allow the parties the opportunity to be heard even when sua sponte raising the issue of subject matter jurisdiction. See, e.g., Lunderstadt v. Colafella, 885 F.2d 66, 69 (3d Cir.1989); Knop v. McMahan, 872 F.2d 1132, 113 (3d Cir.1989); Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725, 729 (3d Cir.1988); Lewis v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 771, 826 F.2d 1310, 1312 (3d Cir.1987); Kiick v. Metropolitan Edison Co., 784 F.2d 490, 492 (3d Cir. 1986); Stibitz v. General Pub. Utilities Corp., 746 F.2d 993, 995 (3d Cir. 1984); Local Union 334, United Ass’n of Journeymen and Apprentices of Plumbing and Pipe Fitting Indus. of U.S. and Canada, AFL-CIO, 628 F.2d 812, 813 (3d Cir.1980); Medlin v. Boeing Vertol Co., 620 F.2d 957, 958 & n. 1 (3d Cir.1980); Jersey Central Power & Light Co. v. Local Unions 327, 749, 1289, 1298, 1303, 1309 and 1314 of Int’l Brotherhood of Elec. Workers, 508 F.2d 687, 698 n. 30 (3d Cir.1975).

. Although the majority opinion refers generally to the basis for the district court's remand order, it paints an incomplete picture. The majority notes that the district court entered its first remand order because Ward Trucking’s state court complaint and writ failed to show a sufficient amount in controversy, and because the affidavit of Liberty Mutual's counsel, in which he opined that the amount in controversy exceeded $50,-000, was legally insufficient. And, as the majority explains, the district court remanded the second time after it refused to consider the discovery responses that had since been submitted by Liberty Mutual in support of removal. Despite the fact that Liberty Mutual thus presented admissions of the plaintiff, and not merely a statement of its own counsel's views, the majority simply states:
The issue the district court confronted in each opinion was whether the papers that Liberty Mutual placed before it established the amount in controversy requirement of diversity jurisdiction.
Maj.Op. at 755. This characterization of the issues is incomplete.
Under the first paragraph of 28 U.S.C. § 1446(b), the issue in the first removal and remand was whether the "initial pleadings” filed by the defendant in the state court action established that suit could have been brought in federal court. See Foster v. Mutual Life Marine & Inland. Ins. Co., 986 F.2d 48, 54 (3d Cir.1993), cited in Maj.Op. at 744. However,' under the second paragraph of section 1446(b), the issue in the second removal and remand was whether Liberty Mutual had presented the district court with "other paper" that showed an adequate amount in controversy. Foster resolved only the question of what constituted "pleadings” and did not define "other paper"; indeed, several reported decisions, including one from the Middle District of Pennsylvania, hold that discovery responses may constitute "other paper" that can establish amount in controversy under section 1446(b). See, e.g., Zawacki v. Penpac, Inc., 745 F.Supp. 1044, 1047 (M.D.Pa.l990) (deposition testimony). But Ward Trucking cited none of these cases to the district court, instead using the Foster definition of pleadings to argue in its remand motion that the discovery responses were inadmissible for amount in controversy purposes. Without even asking whether Liberty Mutual disagreed with that construction of section 144.6(b) (at which time Liberty Mutual could have called tírese other cases to the court’s attention for consideration), the district court entered a remand order that word for word adopted Ward Trucking’s interpretation of Foster and section 1446(b).
I do not, of course, opine as to whether Liberty Mutual or Ward Trucking correctly interpreted section 1446(b). My discussion is meant solely to illustrate the dangers inherent in the majori *757 ty’s interpretation of section 1447(c) as authorizing district courts to remand without giving the parties notice and an opportunity to be heard.

. The construction of 1447(c) described above also accords with the sound practice of many of our district court judges. See, e.g., Allergy Diagnostics Lab. v. The Equitable, 785 F.Supp. 523, 524 (W.D.Pa.1991) (addressing arguments made by removing defendant "upon the court's raising the jurisdictional issue at a status conference”); McDonough v. Blue Cross of N.E. Penn., 131 F.R.D. 467, 470-72 (W.D.Pa.1990) (remanding only after addressing and rejecting defendants contentions in support of jurisdiction); Mall v. Atlantic Fin. Federal, 127 F.R.D. 107, 108-09 (W.D.Pa.1989) (although neither plaintiff nor defendants moved for remand, both plaintiff and one defendant questioned the court's jurisdiction); id. at 110 (defendant opposing remand filed supplemental brief arguing for jurisdiction); Recchion v. Kirby, 637 F.Supp. 290, 291 (W.D.Pa.1986) ("[The district court] sua sponte addressed the propriety of removal ... and the basis for ... subject matter jurisdiction and ordered the parties to file briefs on the issue.’’).

. We did not decide whether the district court was ever permitted to remand for defect in removal procedure absent a motion by a party. See id. at 65:

. It remains an open question whether such conduct violates the Due Process Clause, for Liberty Mutual has not brought a constitutional challenge.