NEIDERHISER, Glen M. and Brown, Gregory C., t/a Progressive Enterprises, t/a Hollywood Stereo and Video, Appellants,

v.

The BOROUGH OF BERWICK, Definnis, Daniel, Sr., Metz, Thomas, Butera, Carmen, and Davidson, Herman, members of the Zoning Hearing Board of the Borough of Berwick.

No. 87–5505.

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 1987.

Decided March 1, 1988.

---

John A. Mihalik (argued), Hummel, James & Mihalik, Bloomsburg, Pa., for appellants.

Donald H. Brobst (argued), Robert D. Schaub, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., Joseph Torsella, Sol. for Berwick, Berwick, Pa., for appellees.

Before GIBBONS, Chief Judge, and SLOVITER and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court, which dismissed plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 on grounds that there was no viable case or controversy before the court, and therefore no jurisdiction. Because we find that plaintiffs did allege a cause of action encompassing a viable case or controversy, we conclude that the district court had jurisdiction, and will reverse.

### I.

In June of 1986, Hollywood Video ("Hollywood")[1] entered into an agreement to lease the premises at 906 Market Street in the Borough of Berwick ("Berwick").[2] Hollywood's intent was to establish at that location a store for the purpose of renting and selling movies, video equipment and related supplies. As the intended use did not fall within those permitted by the area zoning plan, the zoning officer would not grant her approval. Therefore, on July 25, 1986, Hollywood applied to the Berwick Zoning Hearing Board ("Board") for a special exemption based on the fact that the property had been operated on a commercial basis for the past 30 years and that the proposed use was consistent with prior nonconforming (i.e., commercial) use.

The Board denied the application on August 13, 1986. Although it did not articulate a reason for the denial, a transcript of the hearing reflects that in considering the application the Board focused on the fact that a significant portion of Hollywood's business consists of the sale and rental of adult movies.[3] A fair reading of

1. Glen Neiderhiser and Gregory Brown, the individual plaintiffs involved herein, trade as Progressive Enterprises and as Hollywood Stereo and Video. For the sake of convenience, we will refer to them collectively as "Hollywood".

2. Except where otherwise noted, we will refer to all the named defendants as "Berwick".

3. Hollywood stated that twenty percent of its gross rental sales (at its other locations) consists of adult movies. These movies are displayed in a separate location from the other movies (usually in another room) where they are not accessible to minors or to those who have no interest in these films.

the questioning and comments of the Board members at the hearing suggests that they would have viewed the application more favorably if Hollywood did not purvey movies of this genre.

Subsequent to the denial, the parties attempted to negotiate a settlement of the dispute. As part of the settlement agreement, Berwick included a provision mandating Hollywood's compliance with Borough of Berwick Ordinance No. 1158 ("Ordinance 1158"),[4] which was enacted by Berwick in 1982 in order to prohibit "the sale of lewd, obscene, pornographic publications and material, and/or the establishment of adult book stores" in the borough. App. at 40. Viewing the statute as an unconstitutional attempt to limit its business, Hollywood refused to execute the stipulation with the provision relating to Ordinance 1158. Hollywood then appealed the Board's decision to the Court of Common Pleas of Columbia County, pursuant to the Pennsylvania Municipalities Planning Code, 53 Pa.Stat.Ann. § 10101 *et seq.*

On November 20, 1986, at approximately the same time it appealed the Board's original decision to the court of common pleas, Hollywood filed this action setting forth three separate causes of action under section 1983. In its first count, Hollywood alleged that Ordinance 1158 was unconstitutional in that it was vague, served no legitimate governmental purpose, had no rational basis, and thereby deprived Hollywood of its right to free expression and substantive due process under the first and fourteenth amendments. In addition to damages (in the form of lost profits and rents paid on the Market Street premises before the exemption was issued) and attorneys fees (both for the section 1983 action and the costs of litigating after the alleged improper denial of the exemption), Hollywood sought a judgment declaring the ordinance unconstitutional. Fearing enforcement of the ordinance against it, Hollywood also sought an injunction preventing such an occurrence. In its third count,[5] Hollywood alleged that the individual members of the Zoning Board through their denial of the exemption, and the Borough of Berwick through its adoption of the decision, deprived Hollywood of its first and fourteenth amendment rights of free expression. As to this count, Hollywood sought damages and an order directing the defendants to issue the exemption.

On April 15, 1987, Hollywood filed a motion for summary judgment, asking that the ordinance be declared unconstitutional. Soon thereafter, on April 22, the court of common pleas reversed the denial of the zoning exemption and remanded the matter to the Board for specific findings of fact and conclusions of law. On remand, the Board made the findings of fact mandated by the court of common pleas, and granted the exemption. Hollywood opened for business at the Market Street location on June 1, 1987.

On June 24, 1987, the district court—noting that Hollywood had been granted the zoning exemption—denied Hollywood's motion for summary judgment, and instead dismissed the entire action on the ground that it lacked jurisdiction. The district court reached this conclusion because in its view Hollywood had failed to demonstrate that it faced an imminent threat of enforcement by the borough of the alleged unconstitutional ordinance. Hollywood appeals the dismissal to this Court.

## II.

The issue before us is whether the district court erred in determining that there was no live case or controversy before the court, thereby divesting it of jurisdiction. As the district court's holding in this respect involves the interpretation and appli-

---

**4.** Paragraph eight of the proposed Stipulation of Settlement states:

 The Appellant shall comply with the Borough of Berwick Ordinance No. 1158 with respect to pornography and will not operate and maintain the premises as an Adult Book Shop or Adult Firm [sic] Viewing Premises.

App. at 28.

**5.** Hollywood withdrew its second count, based on equal protection grounds, early in the proceedings.

cation of a legal precept, our review is plenary. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.), *cert denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

### III.

The district court dismissed Hollywood's action for want of jurisdiction because it concluded there was no live case or controversy before the court. The district court reached this conclusion since it found that the allegations that the ordinance would be enforced against Hollywood were too speculative and therefore "insufficient ... to present a case in controversy." App. at 48. Hollywood argues that this determination was erroneous for several reasons, each of which we will address in turn.

### A.

Hollywood first argues that its motion for summary judgment (seeking a declaration that Ordinance 1158 was unconstitutional) only related to one of the three causes of action set forth in the complaint. Hollywood asserts that the merits of the other counts were not before the court below and should not have been addressed and dismissed sua sponte. We reject this argument as without merit and contrary to law.

■ The subject matter jurisdiction of a federal court is limited by Article III, section 2 of the Constitution, which requires that there exist in the matter before the court a live case or controversy. If there is no justiciable case or controversy, the federal court is divested of jurisdiction and may not consider the case. Contrary to Hollywood's position that a sua sponte determination of jurisdiction was improper, any time a possible lack of a controversy as to any or all claims is brought to the court's attention, whether through a party or through its own discovery, the court is required to resolve the issue. *Trent Realty Assoc. v. First Fed. Sav. & Loan Ass'n,* 657 F.2d 29, 36 (3d Cir.1981); Fed.R.Civ.P. 12(h)(3). Therefore, the district court's consideration of the jurisdictional issue was entirely appropriate.[6]

Hollywood also argues that, contrary to the district court's determination, it did have a reasonable expectation that the allegedly unconstitutional ordinance would be enforced against it. In support of this assertion, Hollywood relies on the fact that the terms of the settlement proposed by Berwick included a provision compelling Hollywood to comply with the provisions of the ordinance. Hollywood avers that if enforcement of the statute was not contemplated, this provision would not have been included. Hollywood also asserts that the expectation of enforcement still exists, so long as the statute remains unchallenged.

Berwick counters that Hollywood lacks standing because it has failed to show an injury or a threat of enforcement. Berwick also argues that the failure of the borough to seek enforcement against Hollywood, and the uncertain nature of Hollywood's inventory and the borough's reaction to that inventory, renders the dispute unripe for adjudication.

■ We conclude that based on the allegations and other matters of record below, there was sufficient evidence that Berwick attempted to compel Hollywood to comply with Ordinance 1158 such that Hollywood has satisfied its burden of showing imminent threat of enforcement of the ordinance. Central to our conclusion is the fact that Berwick sought to induce Hollywood to voluntarily comply with Ordinance 1158 by including a provision to this effect in the stipulation of settlement. Berwick explicitly made compliance with the ordi-

---

**6.** While the district court's consideration of the jurisdictional issue sua sponte was proper, the court did not afford the parties the opportunity to brief or present evidence on this issue. We find this lack of opportunity to be heard to be improper. The court below should have allowed Hollywood sufficient time to present evidence or otherwise respond on the issue of jurisdiction before it determined that none existed. *See Local 336, American Fed. of Musicians, AFL–CIO v. Bonatz,* 475 F.2d 433, 437 (3d Cir. 1973); *Prakash v. American University,* 727 F.2d 1174, 1179–80 (D.C.Cir.1984). However, in light of our determination that there was a live controversy, *see infra,* we need not remand on this issue.

nance a condition to the granting of the exemption. Although Berwick eventually agreed to grant the exemption upon remand by the court of common pleas, its attempted coercive use of the ordinance cannot be ignored. If Berwick had succeeded in obtaining Hollywood's consent to the settlement terms, Hollywood would have waived its ability to challenge thereafter the constitutionality of the ordinance and would have been bound by its provisions. Berwick then would have achieved compliance with the ordinance without actually having to utilize its provisions.[7]

Berwick's inclusion of the reference to the ordinance in its settlement proposal to Hollywood and its alleged refusal to grant an exemption based on Hollywood's distribution of adult movies could support a finding that Berwick sought to use the ordinance in a coercive manner. In our opinion, this provides sufficient justification for Hollywood to have a reasonable expectation of enforcement of the ordinance against it prospectively. The ordinance is still on the books and capable of utilization, and just because it has not yet been formally utilized by Berwick does not preclude its future use. Indeed, Berwick's raising of the ordinance in the settlement agreement suggests it views Hollywood's business as subject to the ordinance. Therefore, unless subsequent events have rendered enforcement against Hollywood substantially less likely, we are satisfied that Hollywood has a sufficient justification for fearing enforcement of the ordinance against it such that a ripe controversy exists allowing Hollywood to challenge the constitutionality of the statute.

### B.

Hollywood also argues that in addition to its challenge to the ordinance, it stated a viable cause of action on other grounds which would constitute a case or controversy, but which were not addressed by the court below. Based on our review of the record, we agree that there were sufficient allegations of past deprivations of constitutional rights and damages flowing therefrom, such that a live case or controversy exists.

Hollywood alleged that the Board denied its application for a special zoning exemption based on an improper reason—the fact that Hollywood as part of its business rented and sold x-rated movies—which deprived Hollywood of its right to free expression and due process. Specifically, Hollywood's complaint stated, in paragraph 12:

> The Plaintiffs' application met all requirements of the law of the Commonwealth of Pennsylvania and of the Zoning Ordinance of the Borough of Berwick and the application was denied because a portion of the videotape rentals involved x-rated movies.

App. at 8. In its order dismissing the action, the district court failed to address any of Hollywood's causes of action other than its challenge to Ordinance 1158. Based on the allegations in paragraph 12, as well as the types of constitutional violations alleged in the damages section of the complaint, we discern two separate and viable causes of action which create a case or controversy.

■ First, we believe that Hollywood alleged a viable due process violation. As the Supreme Court has stated, the due process clause of the fourteenth amendment protects against arbitrary or irrational government action, *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41

---

**7.** The indirect use of Ordinance 1158 may be as effective as an action brought directly under its provisions. The Supreme Court has recognized that such indirect methods can be successful, even in the face of an unconstitutional statute:

> It is true that appellants' books have not been seized or banned by the State, and that no one has been prosecuted for their possession and sale. But though the Commission is limited to informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression of the publications deemed "objectionable" and succeeded in its aim.

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 66-67, 83 S.Ct. 631, 637-38, 9 L.Ed.2d 584 (1963).

L.Ed.2d 935 (1974), including zoning decisions. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). In this case, Hollywood alleged that the exemption was denied for no reason other than that it possessed a certain type of movie for rent or resale. In our opinion, this allegation, although inartfully drawn, plainly states a cause of action based on a violation of due process, since a denial based on nothing other than the subject matter of the films it distributed would be arbitrary or irrational. Therefore, if Hollywood can successfully demonstrate that the defendants arbitrarily or irrationally denied the exemption, visiting a constitutional deprivation on it, then Hollywood may prevail on its due process claim. *See, e.g., Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988).

Second, we believe that Hollywood has also stated a cause of action for a violation of its right of free expression under the first amendment. As the first amendment embraces the production, distribution and exhibition of films and other forms of entertainment, *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501–02, 72 S.Ct. 777, 780–81, 96 L.Ed. 1098 (1952), this protection is afforded to Hollywood's distribution of home videos. According to Hollywood the denial of the zoning exemption was based solely on the fact that some of Hollywood's movies were x-rated. Thus, the denial can be viewed as an attempt by the Board members to regulate Hollywood's distribution on the basis of subject matter alone. The first amendment prevents the government from regulating expression "because of its message, its ideas, its subject matter, or its content." *Police Dep't. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). Therefore, if as alleged the denial was based on the subject matter of twenty percent of Hollywood's business, the denial was improper—an unconstitutionally broad stroke, effectively preventing the dissemination of these films without adherence to constitutionally mandated procedures and safeguards.[8]

We conclude, then, that Hollywood has stated a cause of action for violations of its due process and free expression rights under section 1983,[9] and that its claim for

---

8. The Board members through their denial may have sought to prevent the distribution of obscene materials or further some other important governmental interest. Indeed, it is well settled that obscene speech is not protected, *Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973); *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), and that even protected speech, including films, may be subject to reasonable time, place and manner restrictions where significant governmental interests are served, so long as the regulation is reasonable and is not based on content or subject matter. *Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 535–36, 100 S.Ct. 2326, 2332–33, 65 L.Ed.2d 319 (1980); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975). However, if a restriction based on obscenity is to be imposed, it must be preceded by an examination of the content of that material. *Young v. American Mini Theatres*, 427 U.S. 50, 69–70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976). In this case, the record supports the assertion that the decision to deny the exemption was made on the basis of the subject matter of the films; there was no review of the content of the films to determine whether they were obscene and therefore not subject to

protection. In fact, the Board articulated no official reason or finding concerning the denial.

If the restriction is to be made based on an important governmental interest, that interest should have been articulated, and the restriction should not have been based on the subject matter of the speech, nor should the exclusion have been total. Indeed, the total suppression of the speech by reason of the zoning denial causes another possible constitutional infirmity because, as the Supreme Court cautioned, where restrictions are placed on unprotected expression, the restrictions must be drawn such that they do not unnecessarily infringe on lawful speech. *Schaumburg v. Citizens for Better Env't*, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Marcus v. Search Warrant*, 367 U.S. 717, 730–31, 81 S.Ct. 1708, 1715–16, 6 L.Ed.2d 1127 (1961). The denial here had just that effect—restricting access to undoubtedly protected speech. The denial might also be characterized as a prior restraint, since it worked to proscribe Hollywood's ability to distribute any films. *See, e.g., Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

9. We are not passing on the substantive merits of Hollywood's claims, and therefore do not

damages flowing therefrom demonstrates that a live case or controversy exists. It does not matter that the Board has since reversed itself and granted the zoning exemption; if Hollywood's allegations are true and the denial deprived Hollywood of any constitutional right, even temporarily, the denial would be compensable (the damages flowing therefrom would cover the period running from the denial through the time the exemption was finally granted and Hollywood was allowed to open). Since a viable claim for damages insures that a live controversy exists, *Powell v. McCormack*, 395 U.S. 486, 496–97, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 459, 77 S.Ct. 912, 919, 1 L.Ed.2d 972 (1957); *Gibson v. DuPree*, 664 F.2d 175, 177 (8th Cir.1981) (per curiam); 13A C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 3533.3, at 261–62 (1984), and we find that Hollywood has set forth a claim for damages, we conclude that Hollywood has adequately set forth a case or controversy.

## IV.

We believe that Berwick's attempt to indirectly compel compliance with Ordinance 1158 provided a sufficient basis for Hollywood's fearing future application of the ordinance, allowing Hollywood to challenge its constitutionality. In addition, despite the fact that Hollywood has been granted an exemption allowing it to operate a video store in the Borough of Berwick, our review of Hollywood's complaint leads us to conclude that it states a justiciable cause of action for past constitutional deprivations and damages flowing therefrom, such that a live controversy still exists. We will reverse the district court's dismissal for lack

---

address whether either the ordinance or Berwick's actions violated Hollywood's constitutional rights. We conclude only that a cause of

of jurisdiction and remand for proceedings consistent with this opinion.

---

action encompassing a live case or controversy has been sufficiently stated to allow this matter to proceed further.