MeKELVIE, District Judge
(sitting by designation), dissenting.
I agree with the majority that this court should affirm the district court’s grant of summary judgment in favor of the defendants with respect to DeBlasio’s 42 U.S.C. § 1983 procedural due process claim, unlawful taking claim, § 1985(3) claim, commerce clause claim, and state tort claims against the Lavans. I further agree that we should reverse the grant of summary judgment in favor of the ZBA defendants with respect to the New Jersey tort claims. However, because I believe this court should affirm the grant of summary judgment as to DeBlasio’s substantive due process claim, I must dissent from parts III.B & C of the majority’s opinion.
I. Introduction and Factual Background
DeBlasio claims the ZBA defendants violated his rights to substantive due process in determining that his property was not in compliance with the West Amwell zoning ordinances and in denying his application for a use variance. I agree with the majority that this case raises important questions about what property interests substantive due process will protect and that searching for the proper standard is a complicated matter. The majority correctly determines that in order to establish a violation of substantive due process, a plaintiff such as DeBlasio must demonstrate that he possesses a prop *603 erty interest worthy of substantive due process protection. However, I believe the majority’s next conclusion, that a plaintiff need only be a property owner to raise a substantive due process violation, is- unwarranted and unwise. This standard opens the doors to the federal courts far wider than the Constitution contemplates, and surely will require the federal courts to sit as “zoning boards of appeals.” See RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir.1989). Furthermore, even under the majority’s definition of what constitutes a sufficient property interest, I believe DeBlasio has failed to demonstrate the existence of a genuine issue of material fact and thus, the district court’s grant of summary judgment must be affirmed.
The facts of this case are simple and straightforward. Indeed, the parties do not disagree as to the following central .facts. This case begins with the only two quonset huts existing in West Amwell Township, each located on a different piece of property. Plaintiff is the owner of one-of these pieces of property, which he began renting in 1979 to Peter Holmes for his lead acid battery distribution business.[1] The other parcel of land is owned by the son of defendant Werner Hoff, a member of the ZBA. On February 8,1989, Zoning Officer Venettone issued a first notice to DeBlasio that his property was in violation of West Amwell zoning ordinances. At around the same time, Hoff encountered Holmes in a diner and suggested that Holmes consider renting Hoffs son’s quonset hut property. Holmes told Hoff that he was not interested because the hut was too small for his use. On June 26, 1990, the ZBA conducted a hearing on DeBlasio’s first notice of violation, and decided that since Ven- ■ ettone’s letter to DeBlasio failed to specifically identify the zoning ordinance violated, it was therefore inappropriate to make a determination on the violation. Some time after this hearing, Venettone called Hoff concerning zoning business, at which time they discussed the DeBlasio matter and Hoff gave Venettone his opinion that DeBlasio’s property was in violation of the zoning laws. On August 7, 1990, Venettone issued a second notice of violation to DeBlasio, stating that his use. of the property was an expansion of a pre-existing, nonconforming use exception to the zoning ordinances. -DeBlasio appealed the decision and applied for a use variance. On October 23, 1990, the ZBA voted to uphold Venettone’s determination of noncompliance. In addition, on May 28,1991, the ZBA adopted a motion to deny DeBlasio’s application for a variance,. and on June 25, 1991, they adopted a resolution memorializing that decision.
Thus, the parties are not in dispute as to the events that occurred leading up to the ZBA’s determination that DeBlasio’s property was in violation of West Amwell’s zoning ordinances and its decision to deny DeBlasio a use variance. The only dispute, therefore, is as to what inferences may reasonably be drawn from those facts. The district court determined that, after the close of lengthy discovery, DeBlasio failed to offer evidence sufficient to allow a reasonable jury to draw the inference that the ZBA’s zoning decisions were' based on bias, improper motive, or some other unlawful criteria. As such, the case was ripe for the grant of a summary judgment. However, the majority disagrees, concluding that “a genuine issue of material fact must .be resolved to determine whether or not Werner Hoff, for personal reasons, improperly interfered with the process by which the Township of Amwell rendered zoning decisions.” Maj. op. at 601.
II. DeBlasio’s Property Interest
The majority correctly begins its analysis with the property interest DeBlasio must possess in order to make out a claim under substantive due process, and focuses on Bello v. Walker, 840 F.2d 1124 (3d Cir.1988). In Bello, we did not discuss whether the plaintiffs possessed a requisite property interest; however, we examined the district court’s grant of summary judgment assuming that plaintiffs had a sufficient property interest in obtaining a municipal building permit. Thus, the majority notes that one can read Bello as *604 requiring a plaintiff to possess “a particular quality of property interest” before he or she may bring a claim for a substantive due process violation. This court recently reaffirmed this position in Ademo, holding that a plaintiff “complaining of a violation of substantive due process rights ... must prove that the governmental authority acted to ‘infringe[ ] a property interest encompassed by the Fourteenth Amendment.’ ” Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir.1994) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir.1991), cert. denied, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992)); see also Reich v. Beharry, 883 F.2d 239, 245 (3d Cir.1989) (finding plaintiff “possesses no property interest that entitles him to substantive due process protection”).
The majority falters, however, when it turns to the determination of exactly what property interests will qualify for substantive due process protection. The majority finds “it consistent with Bello” to hold that mere ownership is “a property interest worthy of substantive due process protection.” Slip op. at 600. Thus, in order to establish a violation of substantive due process, a plaintiff need only allege that a decision limiting the use of land he or she owns was “arbitrarily or irrationally reached.” I believe this rule of law is incorrect for two reasons.
First, I believe that the majority’s standard represents a departure from the legal precedent of the Supreme Court and of this Circuit. The majority relies on Bello and Neiderhiser v. Borough of Berwick, 840 F.2d 213 (3d Cir.1988), to support its conclusions. However, I do not read Bello to stand for the proposition that mere ownership is a sufficient substantive due process property interest. As stated above, the property interest at issue in Bello was the apparent right to a municipal building permit. Similarly, Neid-erhiser does not support such a broad standard. In Neiderhiser, as in Bello, we skipped the necessary determination of what property interest plaintiffs possessed. However, in that case, the plaintiffs were lessors who asserted a right to a special zoning exemption “based on the fact that the property had been operated on a commercial basis for the past 30 years and that the proposed use was consistent with prior nonconforming ... use.” Neiderhiser, 840 F.2d at 214. Thus, it was this interest in the right to a zoning exemption which we assumed was sufficient to allege a viable due process violation.
To answer the question of what “particular qualities” of property interests are protected by substantive due process, I believe our analysis is dictated by our recent decision in Ademo, which follows the Supreme Court’s teachings in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Ademo, we adopted the Court’s position that property interests are not created by the Constitution, but instead “stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.” Acierno, 40 F.3d at 616 (quoting Roth, 408 U.S. at 577, 92 S.Ct. at 2709). In so doing, we held that “when analyzing substantive due process claims courts are required to turn to state and local law to determine whether the plaintiff possessed a property interest which was abrogated by the governmental action.” Id.
In Roth, the Supreme Court focused its definition of a property interest under the Fourteenth Amendment on “what is sought.” RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 915 (2d Cir.1989). In its test, the Court rejected the supposition that a property interest in a certain benefit could stem from a mere “abstract need or desire for it” or “unilateral expectation of it.” Instead, there must be a “legitimate claim of entitlement.” Roth, 408 U.S. at 577, 92 S.Ct. at 2709; accord RRI, 870 F.2d at 915. As we recognized in Acier-no, this claim of entitlement must be found in state law.
In footnote 9 of its opinion, the majority displays its uncertainty that Roth’s “legitimate claim of entitlement approach” is mandated by the Supreme Court, restating its belief that the Court has “yet to articulate a standard for determining which state-created property interests merit substantive due process protection.” Maj. op. at 600. Whether or not the Roth approach is required by the *605 Supreme Court, it would appear that this court has already indicated its approval of the “claim of entitlement” standard by holding in Ademo that property interests are created by “rules and understandings that secure certain benefits and support claims of entitlement to those benefits.” Acierno, 40 F.3d at 616 (emphasis added).
In addition, the “claim of entitlement” standard should be applied in this case not only because it follows from the Supreme Court’s and Third Circuit’s prior jurisprudence, but also because it represents the approach to substantive due process zoning cases adopted by many other circuits as well. See Gardner v. Baltimore Mayor and City Council, 969 F.2d 63, 68 (4th Cir.1992) (holding that existence of a property interest turns on whether there is a “legitimate claim of entitlement” under state law); Spence v. Zimmerman, 873 F.2d 266, 258 (11th Cir.1989) (same); RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 917 (2d Cir.1989) (same); Carolan v. City of Kansas City, 813 F.2d 178,181 (8th Cir.1987) (same); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58-59 (2d Cir.1985) (same).
Second, and perhaps equally as important, I believe the majority’s new standard of “mere ownership” is erroneous because essentially it is tantamount to no standard at all. It is difficult to imagine that a plaintiff would argue his or her substantive due process rights had been violated as to property he or she did not even own .(or at least possess a significant financial interest in). The majority’s conclusion establishes a precedent whereby a plaintiff states a substantive due process claim merely by alleging deliberate and arbitrary abuse of government power. It invites any land owner into federal court to challenge even the most mundane and routine zoning decisions, ignoring the oft-cited admonition that the role of the federal courts “is not and should not be to sit as a zoning board of appeals.” Village of Belle Terre v. Boraas, 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) (Marshal, J., dissenting). As Judge Posner wrote for the Seventh Circuit: “[I]t is tempting to view every zoning decision that is adverse to the landowner ... as a deprivation of property.... [However, n]o one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions.” Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 465-66 (7th Cir.1988).
I believe the majority misunderstands the concern I have articulated above when it states in footnote 11 that “Bello has not overburdened the federal courts by inviting mer-itless landowner suits.” Slip op. at ,601. My objection to the challenges to routine zoning decisions that could be brought, under the majority’s standard, by anyone who owns land is not that the courts will now be flooded by claims that are meritless per se. It is, rather, that claims brought under this standard do not raise the issues of constitutional significance appropriately addressed by the federal courts. As the First Circuit has consistently held, “the due . process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief.” Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir.1992). Every zoning decision seemingly “impinges upon a landowner’s use and enjoyment of property.” See slip op. at 601. Thus, confining the category of property interests a plaintiff must possess- simply to ownership subjects every zoning decision to potential federal review.
I believe, as Judge Posner wrote in Coni-ston, “[pjroperty is not a thing, but a bundle of rights.” 844 F.2d at 465. Hence, we must look to what particular rights and uses a person is entitled by the state through the ownership of a parcel of land in order to determine whether he or she possesses a property interest that merits due process protection. While I can appreciate the majority’s frustration at the perceived lack of guidance in its search for what constitutes such a sufficient property interest, the difficulty of the task does not grant us license to set the threshold so low as to eradicate all utility it was intended to possess.
*606 With that preface, I now turn to the evaluation of DeBlasio’s claims. DeBlasio alleges his substantive due process rights were' violated by two actions of the ZBA- — -the affir-mance of Venettone’s determination that De-Blasio’s property was not in compliance with a previously granted exception to the West Amwell zoning code and the denial of DeBla-sio’s application for a use variance. The first step in analyzing DeBlasio’s claims is to determine whether he possesses a property interest , that is cognizable under the Fourteenth Amendment. See Gardner, 969 F.2d at 68. In order to make this determination, we must look to what “claims of entitlement” can be found in state law.
DeBlasio’s claims raise two possible property interests: his right to the continued nonconforming use of his property and his right to obtain a use variance. As to the first, the question of whether a claim of entitlement exists “should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood” that DeBlasio’s property would have been found to comply with the preexisting, nonconforming use exception granted to the first owner. See Yale Auto Parts, 758 F.2d at 59. It is true that under the New Jersey Municipal Land Use Act, “[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued.” N.J.Stat.Ann. § 40:55D-68 (1991). However, the New Jersey Supreme Court has recognized the general policy in the law to restrict and disfavor a nonconforming use: “Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice.” Town of Belleville v. Parrillo’s, Inc., 83 N.J. 309, 416 A.2d 388, 391 (1980). Thus, an existing nonconforming use may not be enlarged or changed as of right and will be allowed to persist only “if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance.” Id. Furthermore, “[wjhere there is doubt as to the substantiality of the extension, it should be disapproved.” Hantman v. Township of Randolph, 58 N.J.Super. 127, 155 A.2d 554, 558 (App.Div.1959).
The previous owners of DeBlasio’s property were operating a one-man automobile repair shop when West Amwell adopted its first zoning ordinance, and it was this use that was permitted to continue as a preexisting nonconforming exception to the zoning restrictions. Holmes’s interstate battery distributorship clearly represents a departure from this prior use, and there would appear to be some doubt as to whether this battery business is “substantially the same kind of use” as the previous single person car repair shop. Thus it cannot be said that there is a “certainty or a very strong likelihood” that DeBlasio would have been permitted to continue the present use of his property indefinitely, and that he would never have been deemed to have expanded the pre-exist-ing nonconforming use exception granted to the prior owners. Consequently, DeBlasio possesses no claim of entitlement under state law to the continued nonconforming use of his property, and thus does not possess this first category of property interest which he asserts.
As to the second possible property interest, that is, whether DeBlasio had a right to approval of his application for a use variance, many courts have held that “whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks all discretion to deny issuance of the permit or approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest.” Gardner, 969 F.2d at 68; accord New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480 (7th Cir.1990); Spence, 873 F.2d at 258; RRI, 870 F.2d at 918; Carolan, 813 F.2d at 181; Michigan Environmental Resources Associates, Inc. v. City of Macomb, 669 F.Supp. 158, 160 (E.D.Mich.1987). Thus, a cognizable property interest exists “only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.” RRI, 870 F.2d at 918. This standard “balances the need for local *607 autonomy in a matter of paramount local concern” (such as zoning regulations) with the need for constitutional protection from governmental abuses of power. See Gardner, 969 F.2d at 69.
New Jersey zoning law authorizes a zoning board of adjustment to grant a variance in “particular cases and for special reasons” to permit “(1) a use or principal structure in a district restricted against such use or principal structure, [or] (2) an expansion of a nonconforming use.” N.J.Stat.Ann. § 40:55D-70(d). However, no variance may be granted unless it can be done “without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.” Id. These provisions include no mandatory language but instead appear to create a flexible standard which assigns boards of adjustment the power to grant a variance in special cases at their discretion. Moreover, the New Jersey courts have recognized that the legislature “has vested discretionary authority in boards of adjustment to grant or deny variance applications.” Eagle Group v. Zoning Bd. of Adjustment, 274 N.J.Super. 551, 644 A.2d 1115, 1120 (App.Div.1994). It follows, then, that state law has given DeBlasio no claim of entitlement to a use variance, and thus no property interest in the approval of his application.
Therefore, since DeBlasio has failed to demonstrate he possesses any property interests cognizable under the Fourteenth Amendment that could have been abrogated by the ZBA, the district court was correct in granting summary judgment in favor of the defendants on this issue, and I believe this court should affirm that decision.
III. Evidence of Personal Bias or Improper Motive
After determining that “a land-owning plaintiff’ who alleges that any governmental decision affecting the use of his or her land was arbitrarily or irrationally reached has, “as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection,” the majority goes on to examine “whether DeBlasio has come forward with enough evidence in support of [his] allegations to survive a motion for summary judgment.” Maj. op. at 601-02. Even if I were to adopt the majority’s position that mere ownership constitutes a property interest sufficient to invoke constitutional protection, I do not agree with the majority’s conclusion that DeBlasio has presented sufficient evidence from which a fact-finder could reasonably conclude that the government action was taken based on improper motives or unlawful criteria.
The Supreme Court has stated, “the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact arises only if a reasonable jury could find for the nonmov-ing party on that fact. Id. at 248, 106 S.Ct. at 2510. The nonmovant is not given the benefit of every inference or possibility, but only of every reasonable inference. Spence, 878 F.2d at 257. The nonmoving party must offer sufficient evidence such that a reasonable jury could return a verdict in favor of that party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. “If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.” Id. at 250-51, 106 S.Ct. at 2511 (citations omitted).
After convincing the court he possesses a cognizable property interest, DeBlasio must demonstrate he was the victim of arbitrary and capricious government action in order to establish that his substantive due process rights were violated. The district court correctly recognized that this determination turns on whether the actions taken by the ZBA against DeBlasio were based on unlawful criteria such as personal bias, bad faith, or improper motive.
.To support his allegations of personal bias and improper motive, DeBlasio appears to allege the following facts: 1) At some point in early 1989, Hoff encountered Holmes in a diner and suggested that Holmes consider renting Hoffs son’s quonset hut property. During the conversation, Hoff noted that the zoning regulations were more beneficial for *608 his business. However, Holmes told Hoff that he was not interested because the hut was too small for his use. 2) Some time after June 26, 1990, Venettone called Hoff concerning zoning business, at which time they discussed the DeBlasio matter and Hoff gave Venettone his opinion that DeBlasio’s property was in violation of the zoning laws. 3) Hoff participated in the 1990-91 zoning hearings regarding DeBlasio’s property. As I stated above, defendants do not dispute that these events occurred. The district court found that this evidence was insufficient to enable a reasonable jury to find bias or improper motive, and thus to return a verdict in DeBlasio’s favor, and I agree.
As the majority recognized, “the record does not show that Hoff ever ‘pressured’ Holmes to abandon the DeBlasio property in favor of his [son’s].” Maj. op. at 602. He had no contact with Holmes regarding this suggestion after early 1989. It is also undisputed that Holmes believed the other quon-set hut property was inadequate for his business, and there is no evidence to suggest that Holmes would have relocated to that property. Furthermore, Venettone’s own testimony shows that he called Hoff in his capacity as secretary of the board of adjustment and broached the subject of the DeBlasio zoning matter to get information about it. None of the above evidence is sufficient to support the inference that Hoffs actions as a member of the ZBA were influenced by personal bias or improper motive; no reasonable jury could draw this inference, as it would be based solely on mere speculation.
DeBlasio also contends that Hoff’s involvement in the hearings reveals a conspiracy on the part of the ZBA to violate his substantive due process rights. However, DeBlasio has provided insufficient evidence to support this theory. It would appear that discovery in this case lasted for twelve months, and yet DeBlasio has been unable to present any facts to demonstrate the existence of a conspiracy. While the district court prohibited DeBlasio from deposing the members of the ZBA as to the mental thought processes they employed in reaching the decision to deny a use variance, DeBlasio remained free to inquire into ex parte meetings, off-the-record communications, or discussions between Hoff and other ZBA members, or other manifestations of personal animus, and to probe for documentary evidence of such events. But after the close of lengthy discovery, DeBlasio has come forward with no evidence of any discussions, arrangements, promises, or agreements between Hoff and the other ZBA members to vote against DeBlasio. Furthermore, he has not identified a single occasion of contact between Hoff and any board member that would suggest improper conduct. Similarly, DeBlasio has supplied no evidence that would show Hoff was retaliating against Holmes because he did not wish to move to Hoff’s son’s property. Thus, no reasonable jury could find that a conspiracy existed within the ZBA to deprive DeBlasio of substantive due process.
Finally, ■ DeBlasio has failed to offer any facts to show a causal link between Hoff’s alleged personal bias and membership on the zoning board and the decisions affecting De-Blasio’s property. First, the ZBA’s vote to affirm Venettone’s determination'that DeBla-sio’s property was an expansion of the preexisting nonconforming use exception was unanimous. Second, the vote to deny the application for a variance was four to three, with Hoff voting against. However, the grant of a variance requires five votes by law. See N.J.StatAnn. 40:55D-70(d). Even if Hoff did not participate in the vote, DeBla-sio would have garnered only three votes in support of the variance, still rendering his application unsuccessful. Again, no reasonable jury could find that the ZBA’s decisions were based on unlawful criteria. DeBlasio simply has been unable to provide evidence that would support his allegations. Because DeBlasio has, after adequate time for discovery, failed to make a showing sufficient to establish essential elements of his case, upon which he will bear the burden of proof, I would affirm the district court’s grant of summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
IV. Conclusion
The district court granted summary judgment in favor of the ZBA defendants on *609 DeBlasio’s substantive due process claim. The majority reverses this decision, finding that DeBlasio has offered sufficient evidence to survive summary judgment. In so doing, the majority holds that mere ownership is a sufficient property interest worthy of substantive due process protection. I disagree with that conclusion, and furthermore would affirm the grant of summary judgment as DeBlasio has failed to demonstrate he possesses a property interest cognizable under the Fourteenth Amendment. However, even under the majority’s conclusion as to the requisite level of property interest, I would affirm summary judgment, as I believe De-Blasio has failed to present evidence that would permit a reasonable jury to find the ZBA’s zoning decisions with regard to De-Blasio were based on personal bias, improper motive, or some other unlawful criteria.
I respectfully dissent.