**WOODWIND ESTATES, LTD., Plaintiff,**

v.

**W.J. GRETKOWSKI, Larry Sebring, and James Decker, Individually, and in their capacity as Supervisors of Stroud Township; and W. Taylor Wenck, Edward Cramer, Frank Herting, and Joan Keiper, Individually, and as members of the Planning Commission of Stroud Township; and Stroud Township, Monroe County, Pennsylvania, Defendants.**

No. 3:CV–97–0472.

United States District Court, M.D. Pennsylvania.

March 23, 1999.

Marshall E. Anders, Rosenblum & Anders PC, Stroudsburg, PA, for plaintiff.

David E. Heisler, Lenahan & Dempsey, Scranton, PA, for defendants.

## *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On March 25, 1997, plaintiff Woodwind Estates, Ltd., initiated this action with the filing of a complaint alleging that defendants unlawfully denied an application for a planned real estate subdivision because the potential tenants would be low-income families, most of them minorities. Woodwind brought claims under 42 U.S.C. §§ 1983 (Count I), 1981 (Count II), 1985 (Count III), and supplemental claims for

civil conspiracy (Count IV), intentional interference with a contractual relationship (Count V), interference with prospective contracts and business relationships (Count VI).

Trial began on Friday, March 12, 1999. At the time of trial, Woodwind was proceeding on its claims for liability under §§ 1981, 1983. At the close of Woodwind's case in chief, the court granted in part defendants' motion for judgment as a matter of law under Fed.R.Civ.P. 50. Specifically, we indicated that there was no basis for municipal liability, for punitive damages, nor for liability on the part of the Township Supervisors. Also, Woodwind produced no evidence that the action taken by the Planning Commission was racially motivated, and the § 1981 claim was eliminated. We noted that the court would not rule on the motion as it related to the failure of Woodwind to prove that defendants' conduct impinged a right cognizable in a substantive due process analysis.

On Friday, March 19, 1999, the court issued an order canceling further proceedings, having determined that defendants were entitled to judgment as a matter of law on the latter issue. This memorandum is issued for the purpose of explaining that holding and for the entry of judgment.

Before the court is defendants' motion for judgment as a matter of law.

**DISCUSSION:**

### I. STANDARD

The applicable Rule provides as follows:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). A motion under Rule 50 may be made at any time before submission of the case to the jury. Fed. R.Civ.P. 50(a)(2).

"A district court should grant such a motion only if, viewing all the evidence in favor of the non-moving party, no reasonable jury could find liability on a particular point." *Duquesne Light Co. v. Westinghouse Electric Corp.,* 66 F.3d 604, 613 (3d Cir.1995) (citations omitted). It is not sufficient that a scintilla of evidence supports the non-movant's position; the evidence must be sufficient "to allow a reasonable juror to conclude that the position more likely than not is true ..." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

### II. STATEMENT OF FACTS

On March 18, 1996, Woodwind submitted a "Preliminary Subdivision Plan Application" for development of a tract of land in Stroud Township, Monroe County, Pennsylvania. The development was to be financed by the sale of federal income tax credits obtained from the Pennsylvania Housing Finance Agency. The award of the tax credits through a competitive bidding process was based on the need for "affordable" (as opposed to low-income) housing in Stroud Township.

Woodwind's application first was considered by the Stroud Township Planning Commission at a meeting on March 27, 1996. Neighbors opposed to the development attended, and representatives of Woodwind were questioned about the intended use. One Commissioner, during a discussion of the difference between tax credits for affordable housing and low-income housing subsidies, stated, "If it looks like a duck, quacks like a duck, it must be a duck." He explained at trial that he meant that tax dollars were being spent, either way, a concept he opposed on principle. Other information also was requested, such as the income levels of prospective tenants, square footage and style of

homes, etc. Woodwind representatives answered the questions, despite the fact that such information was not required for approval under the Stroud Township Subdivision and Land Development Ordinance (SALDO).

The Planning Commission declined to issue a receipt for review of the application at the March meeting because certain engineering detail information was missing from the application documents. The application therefore was resubmitted at the April 24, 1996, meeting of the Planning Commission. At that meeting, the neighbors were represented by counsel, Marc Wolfe, Esquire. Attorney Wolfe argued that the Commission should not accept the application for review because it had been submitted as a subdivision under SALDO but should have been submitted as a Planned Unit Development (PUD), which would require a conditional use permit and special exception permit. William B. Cramer, Esquire, the Commission's solicitor, opined that the project was submitted properly as a subdivision; he felt that the project also could be a PUD, and that Woodwind had the right to choose how to submit the application. The Commission voted to accept the application for review.

During the review process, the Township Engineer corresponded with Woodwind's engineer for the purpose of satisfying her comments on the application, i.e. resolving issues of missing engineering detail. At one point, members of the Commission did a site inspection at the location of the planned development and suggested that Woodwind submit the application as a PUD instead of as a subdivision, a suggestion rejected by Woodwind. During the review process, the number of lots was reduced from 83 to 63.

At a meeting of the Planning Commission on October 30, 1996, the application was again before the Commission, this time for the purpose of determining whether the Commission would recommend approval by the Stroud Township Board of Supervisors. The attorney for the neighbors again attended and argued that the application was a PUD. The solicitor for the Commission again stated that the project could be either a subdivision or a PUD. The Commission voted 4 to 2 to recommend denial of the application "as submitted," concluding the application should have been submitted as a PUD. They recommended to Woodwind that it re-submit the application in that form.

The Board of Supervisors first considered the application at a meeting on November 4, 1996. Action was postponed until a meeting of the Board on November 18, 1996, at which time it voted to deny the application as submitted for the reasons adopted by the Planning Commission and on the advice of its own solicitor, who also felt that the development was a PUD.

At trial, Woodwind presented expert testimony from an attorney specializing in land development to the effect that the project was a subdivision and that there was no legal basis for considering the project as a PUD. We proceed under the assumption that this opinion is correct, and that the vote of the Board of Supervisors was subject to reversal on appeal.

In fact, an appeal of the Board's decision was filed with the Court of Pleas of Monroe County but later withdrawn. Instead of pursuing the appeal, Woodwind commenced this action. It presented evidence that, if it had resubmitted the application as a PUD, the project would have been delayed sufficiently to prevent completion of the project by the December 31, 1997, deadline necessary to retain the tax credits. It therefore abandoned the project and surrendered the tax credits. The injuries claimed include the loss of profits to be generated by the project and a loss of funds already expended.

## III. SUBSTANTIVE DUE PROCESS

We note initially that Woodwind's claim under the Due Process Clause is limited to substantive due process with good reason: Because of the availability of appeal to the

Court of Common Pleas, a claim of a procedural due process deprivation necessarily fails. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680–681 (3d Cir.1991) (availability of judicial review of administrative decisions satisfies requirements of procedural due process), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). *See also DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592, 596–598 (3d Cir.) (to same effect as to adequacy of New Jersey procedure), *cert. denied*, 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995).

In *Midnight Sessions*, the Third Circuit recited:

> We have recognized that, notwithstanding a constitutionally procedurally adequate scheme, a plaintiff may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power. [*Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988).] Thus, allegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons unrelated to the merits of the plaintiffs' application, may support a finding of substantive due process violation. *Id.* See also [*Pace Resources, Inc. v. Shrewsbury Tp*, 808 F.2d 1023, 1035 (3d Cir.)] (irrationality not shown where complaint did not allege government actions toward developer unrelated to land use planning) [, *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987)]. Additionally, the Court of Appeals for the First Circuit has stated that a government's action may violate substantive due process if the plaintiff could show a "fundamental procedural irregularity, racial animus, or the like." *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Clearly in disputed factual situations, determinations of the existence of bias, bad faith, improper motive, racial animus, or the existence of partisan political reasons are properly made by the finder of fact. *Bello*, 840 F.2d at 1130; *deBotton v. Marple Township*, 689 F.Supp. 477, 481 (E.D.Pa.1988) .

945 F.2d at 683 (bracketed material added to complete citations). It is Woodwind's position that the Planning Commission acted in an arbitrary and capricious manner in recommending that the application be denied because Woodwind had done all that was necessary for approval under SALDO, the applicable ordinance.

There is, however, a preliminary determination to be made by the court, and that is whether the plaintiff has alleged a property interest worthy of substantive due process protection:

> We think it consistent with *Bello* to conclude that ownership is a property interest worthy of substantive due process protection. *See, e.g., Ersek v. Township of Springfield, Delaware County*, 822 F.Supp. 218, 221 n. 3 (E.D.Pa.1993) (offering similar interpretation of Bello).[1] Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership. *Thus, in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily reached.* Where the plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a

---

1. The judgment in *Ersek* was affirmed by the Third Circuit after the opinion in *DeBlasio* issued. *Ersek v. Township of Springfield, Delaware County*, 102 F.3d 79 (3d Cir.1996), *reh'g denied*.

property interest worthy of substantive due process protection.

*DeBlasio* at 600–601 (emphasis added; footnotes omitted). This recitation is rendered somewhat difficult because the Third Circuit first notes that it is *ownership* that is subject to protection, then points out that it is the impingement of *use and enjoyment* of property that is the focus of substantive due process analysis. This difficulty echoes the Third Circuit's earlier statements that this area of the law is "famous for its controversy, and not known for its simplicity," *id.* at 598 (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir.1987)), and that there is a paucity of guidance from the Supreme Court. *Id.See also Homar v. Gilbert*, 89 F.3d 1009, 1021 (3d Cir.1996) (noting lack of guidance provided by case law of Third Circuit and Supreme Court as to the type or "certain quality" of property interest subject to substantive due process protection), *rev'd on other grounds*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).[2]

In this instance, Woodwind's ownership of the land it intended to develop is not in question, nor is any restriction on its ownership implicated by the Commission's actions. Rather, it is Woodwind's "use and enjoyment" of its property that is in question, and most directly its "use." To say that because Woodwind owned the property it has a cognizable property interest is to oversimplify and misstate the issue. *Compare Ransom v. Marrazzo*, 848 F.2d 398, 411–412 (3d Cir.1988) (provision of water and sewer services by municipality did not confer on landowner a federally protected right to such services). Rather, it appears that the court must look to the nature of the alleged impingement on the use and enjoyment of the property. *See, e.g., Ransom* at 412 (noting that protection of expectation of utility services procedural due process does not transform that expectation into a "substantive guarantee against the state in any circumstance.").

Assuming a protected property interest, the plaintiff still must show that the governmental action "impinged" upon or limited that interest. In this case, we do not see how any property interest on the part of Woodwind was impinged upon or limited by the Commission's recommendation that the application be denied as submitted. It is important to note that the application was not denied outright. Rather, both the Planning Commission and the Board of Supervisors indicated that the application would be approved if submitted as a PUD instead of a subdivision. Thus, Woodwind was not deprived of the use of its property, nor was the use and enjoyment of its property impinged upon or limited in any way. *Cf. Neiderhiser v. Borough of Berwick*, 840 F.2d 213, 218 (3d Cir.1988), in which the Third Circuit held that a lessor who had been denied an exemption from a zoning ordinance stated a substantive due process claim by alleging that the exemption application was arbitrarily and irrationally denied. There the intended use of the property was clearly and materially limited by denial of the exemption.

In arguing against the motion for judgment as a matter of law, Woodwind made much of the fact that it had the right to choose to develop the property as a subdivision rather than as a PUD. Actually, it had the right to develop the property any way that it wanted to, subject to certain limitations. Whether denominated as a "subdivision" or as a "PUD," in the end, nothing substantive would change in the development planned by Woodwind. That is, every lot would remain exactly as planned, every residence would be built as designed, etc. Regardless of whether the Commission was in error in requiring that Woodwind denominate the project as a PUD instead of as a subdivision, the project would end up in the same result.

Woodwind pointed to the timing of certain applications for permits, which vary

**2.** The issue before the Supreme Court was related to the sufficiency of pre-deprivation due process, i.e. notice and hearing before suspension of a tenured public employee.

**542**

somewhat depending on whether the project is a PUD or a subdivision. The same permits must be obtained in either instance, so we do not see how this fact affects the conclusion.

Of more merit is Woodwind's argument that, in recommending that the Board of Supervisors deny the application (which in fact led to the denial), the Planning Commission effectively denied it the use of the tax credits as a means of financing the development and thereby barred the project. It points to the need to complete the project within the time frame permitted by the Pennsylvania Housing Finance Agency, a deadline which could not be met after re-submission. On closer analysis, there are several weaknesses in this argument.

First, Woodwind points to no evidence suggesting that it could not apply for and receive separate tax credits for the next year. It states that the award of the tax credits was due to the need for affordable housing in Stroud Township; we do not see how that need can have disappeared, considering the fact that this development, at least, was not completed. Woodwind also does not indicate that it could not have applied for and received an extension of the time to complete the project.

Even assuming that the tax credits would no longer be available, we do not see how the action of the Commission can be said to have prevented the development. No evidence was produced by Woodwind that alternative forms of financing were unavailable, nor that the project would be less profitable if it proceeded with alternative forms of financing.

To all of this we would add that there was no evidence of any bad faith or improper motive on the part of the Planning Commission. Woodwind would have a fact-finder conclude that there was some insidious motivation behind questions about the project asked by Commission members and the public. This inference does not follow, however, since people who are interested enough about their community to be on a Planning Commission, a volunteer position, would certainly be interested in a new development without seeking to undermine the project.

## IV. CONCLUSION

As recited in our order of March 19, 1999, we conclude that the conduct of the Planning Commission did not impinge upon or limit a constitutionally cognizable interest on the part of Woodwind.